Argued September 30, reversed and decree rendered December 2, 1919.

# MERGES v. MERGES.*

### (186 Pac. 36.)

### Divorce—Review of Decree for Custody of Child.

1. Upon appeal from a decree relating to the custody of a child of divorced persons, the Supreme Court has appellate jurisdiction only.

### Divorce—Affidavits Filed in Supreme Court not Considered.

2. Under Section 556, L. O. L., providing that appeals shall be decided upon the transcript and evidence accompanying it, affidavits filed in the Supreme Court upon appeal from a decree regarding the custody of a child of divorced parties cannot be considered.

### Divorce—Child's Welfare Governs Custody.

3. Although Section 7057, L. O. L., provides that parents have equal rights to the custody of their children, yet, where there is a dispute between divorced parties, the controlling consideration is the child's welfare.

### Divorce—Decree Awarding Custody of Child is Conclusive.

4. Under Section 756, L. O. L., defining the effect of decrees, etc., a modified decree granting a divorced husband the exclusive custody of his son is conclusive in absence of appeal, and can be superseded only by showing that conditions have changed.

[As as the power of a court to modify a decree as to the support of children, see note in 114 Am. St. Rep. 703.]

### Divorce—Burden of Proof as to Custody of Child.

5. A divorced wife seeking to overturn a modified decree awarding custody of the child to its father has the burden of proof.

### Divorce—Evidence as to Validity of Decree Awarding Child's Custody.

6. Evidence that a divorced wife consented to modification of a decree so as to award custody of the child to the husband in order to avoid the husband's formal application for such a modification, etc., *held* to show that she voluntarily consented to the modified decree despite her statement that she was tricked into giving her consent by representations that the change was merely formal.

### Divorce—Effect of Evidence Regarding Custody of Child.

7. Evidence regarding a divorced father's affection and ability to care for his son *held* to show, contrary to the finding below, that the father should continue to have exclusive custody of the child with permission that the child visit his mother at certain stated periods.

---

*On the question of attachment of provisions as to custody of children in divorce decree, see note in L. R. A. 1917B, 495.

REPORTER.

From Clackamas: JAMES U. CAMPBELL, Judge.

In Banc.

The origin of this litigation was a suit for divorce by Mary Edwards Merges against her husband, Ernest E. Merges, begun November 15, 1912. The present contention is about the custody of the minor son, Edward E. Merges, aged four years at the commencement of the litigation in 1912. The original decree provided that the plaintiff and the defendant should have custody of the child alternately, at times prescribed. Afterwards on February 3, 1913, the defendant moved the court for a modification of the decree respecting the control of the son so as to give it to the defendant exclusively, and the plaintiff at the time filed her consent to that modification. Accordingly, it was so done. On January 11, 1916, the plaintiff filed a motion so to change the next previous decree as to allow her to visit and see the child at reasonable and necessary times, and that the custody of him be equally divided between the plaintiff and the defendant, to each one half of the time. The court passed an order to be served upon the defendant requiring him to show cause why the motion should not be allowed. With it he filed a wealth of affidavits from upwards of fifty of the most eminent citizens of Portland, to the effect that the defendant was intensely devoted to the welfare of the child and gave him every attention that could be bestowed upon him in the way of care of his health and conduct; that the little fellow was greatly attached to his father and to the children living in his neighborhood and had thus far shown the effects of training in his exemplary conduct. The affidavits show that the affection manifested between the father and son is unusally warm and intense.

The parties filed their own affidavits and throughout their personal showing runs a vein of antagonism toward each other, which clouds the case.

Without any order having been made, the parties and their attorneys on May 23, 1916, stipulated that the matter of the custody of the child "shall be arranged to have the minor son of plaintiff and defendant visit the plaintiff, while he is in the City of Portland, after school hours during the afternoons of Tuesdays and Thursdays each week and during the daytime of Saturday of each week between the hours of 9 o'clock A. M. and 7 o'clock P. M. Arrangements concerning the visitation of said child during vacations and at other times shall be decided in case of the inability of plaintiff and defendant to agree, by an agreement between the attorneys for plaintiff and defendant." No action of the court was taken by virtue of this stipulation and on September 21, 1918, the plaintiff moved that:

"That part of said decree by which the defendant is granted the care and custody of the minor child of the plaintiff and the defendant herein, named Edward E. Merges, now of the age of about ten years, be set aside and that the care and custody of the said minor child, Edward E. Merges, be given to the plaintiff and that the plaintiff have the sole care and custody of the said minor child."

In addition to the affidavits, the court heard testimony of the parties and certain additional witnesses, and without making findings of fact gave an order of date June 12, 1919, in substance awarding the custody of the child to the plaintiff from and after June 14, 1919, the end of his school year, giving the defendant the right to have him with him one half of the time through the summer vacation, and during the remain-

ing portion of the year each alternate week during Saturday and Sunday, together with the right to visit him at all other reasonable times. The defendant appeals from this order.

REVERSED.   DECREE RENDERED.

For appellant there was a brief over the names of *Mr. John H. Stevenson* and *Messrs. McCamant, Bronaugh & Thompson,* with an oral argument by *Mr. Wallace McCamant.*

For respondent there was a brief and an oral argument by *Mr. E. E. Heckbert.*

BURNETT, J.—During the progress of this litigation concerning the custody of the child, the plaintiff married another husband.

The testimony was heard and the case taken under advisement on February 11, 1919. The decree was rendered, as stated, June 12, 1919. Although the plaintiff had testified that she had no home and that on account of her husband's being in the army they could not have a permanent residence, the court recited that it appeared to its satisfaction "that the plaintiff has a home established in Portland, in the county of Multnomah, State of Oregon." As narrated in the brief of the plaintiff, some affidavits are filed in this court to the effect that after the hearing of the case below she established herself in a home at 535 East Nineteenth Street in Portland; that the defendant had separated from his wife, and that the nurse he had had in charge of the child had left his employment.

1, 2. As a preliminary to the consideration of the case, all the affidavits filed in this court and procured after the decree of the Circuit Court had been entered

must be laid out of the calculation. In such cases as this, the court has only an appellate jurisdiction and the statute, Section 556, L. O. L., plainly says that upon an appeal from a decree given in any court the suit shall be tried anew upon the transcript and evidence accompanying it. This is not a case where the parties have settled their dispute or one where the questions involved have become merely academic, but is one in which the controversy still persists and must be heard upon its merits. We cannot reopen the case and allow additional testimony to be taken upon either side for the first time in this court. It is true that in certain cases the court has heard and considered *ex parte* affidavits on motion to dismiss appeals. For instance, in *Ehrman* v. *Astoria Ry. Co.,* 26 Or. 377 (38 Pac. 306), the plaintiff had brought suit to foreclose a mechanic's lien. Having been defeated in the Circuit Court, he appealed, but afterwards, before the appeal was heard, instituted action on his claim and attached the property of the defendant. This state of affairs was made to appear by uncontradicted affidavits in this court and the appeal was dismissed on the ground that because he had begun an action at law and had attached property, the plaintiff had waived his pending appeal. In *State ex rel.* v. *Webster,* 58 Or. 376 (114 Pac. 932), the relator sued to have the defendant make a showing of the number of days he had been absent from the office of county judge on private business. Pending the appeal by the relator, the defendant resigned the office mentioned and the court dismissed the appeal on the ground that the question had become purely academic and did not present any real controversy. In many other cases the court has dismissed the appeal when the contention is shown without contradiction to have been

ended. Such instances are *Moores* v. *Moores,* 36 Or. 261 (59 Pac. 327); *Thomas* v. *Booth-Kelly Co.,* 52 Or. 534 (97 Pac. 1078, 132 Am. St. Rep. 713). The matter is thus aptly stated in *Livesley* v. *Johnson,* 48 Or. 40, 48 (84 Pac. 1044), where it was urged by the appellants that the parties had settled the dispute and canceled the contract upon which the suit was based, Mr. Chief Justice ROBERT S. BEAN speaking for the court:

"This is an appellate court, constituted and organized to revise and correct the proceedings of the trial court, when regularly brought before it by appeal, and has no original jurisdiction, except such as may be incidental to and in aid of its appellate powers. * * Its inquiry is ordinarily confined to an examination of the record of the court below as embodied in the transcript, but where the appellant has, by some act of his, subsequent to the rendition of the judgment or decree appealed from, waived the right of appeal or otherwise terminated the controversy, such fact may be shown by evidence *dehors* the record, and the appeal will be dismissed because there is no longer any substantial controversy between the parties. * * But, where the relief sought is based on newly discovered evidence, the remedy is not by motion in this court, but by an original suit to vacate or annul the decree. * * The facts upon which the motion in question is based are in the nature of newly discovered evidence, and the inquiry presented involves the consideration and decision of controverted questions of fact. The plaintiffs deny that any settlement of the subject matter of the litigation was ever made by them with Johnson. This question cannot be tried out on *ex parte* affidavits in this court, and the defendant's remedy, if any, must be found in some other proper proceeding."

So here, if any change in the affairs of the parties here involved has occurred since the hearing in the

court below, which would authorize an alteration in the custody of the child, it must be made the subject of litigation in the court of original jurisdiction. We are without power to consider such a showing.

3. The defendant contends that the father has the preference in the custody of the children, and cites *Jackson* v. *Jackson,* 8 Or. 402, in support of this theory. That case was decided before the enactment of Section 7057, L. O. L., which statute declares that:

"Henceforth the rights and responsibilities of the parents, in the absence of misconduct, shall be equal, and the mother shall be as fully entitled to the custody and control of the children and their earnings as the father."

Primarily, therefore, under our statute, the parents have equal rights to the custody of their children. Where this is in dispute it is universally conceded that the controlling consideration, paramount above all others, is the welfare of the child. It is not a chattel like pigs, chickens or furniture, to be divided between the divorce litigants on the basis of monetary value; neither is its custody to be made the vehicle for a continuation of their antagonisms and resentments toward each other. It is a matter of almost tragic regret that parents should break up their home by their bickerings and deprive their child of that nurture and admonition that congenial parents can give. But such things happen, and out of the wreck the courts must do the best possible under the circumstances for the welfare of the offspring. The preferences of the parents, whether founded in spite or in real affection, must yield to the best interests of the child. The authorities are practically unanimous on this subject. The principle is conceded in the

argument and it is not necessary to note precedents in support of this conclusion.

4. The court rendered a decree respecting the condition and custody of the child. The defendant cites many precedents to the effect that this decree, like all others of a court having competent jurisdiction of the persons and of the subject matter, is final and that it cannot be overturned or modified unless subsequent conditions justify such a change. To this effect, see *Crockett* v. *Crockett*, 132 Iowa, 388 (106 N. W. 944), where the court, speaking by Mr. Justice BISHOP, says:

"It is fundamental doctrine that a matter, including all phases which are or should have been brought to the consideration of the court, which has been once litigated and passed into judgment or decree, must be considered as settled beyond recall. The rule and the reason for it spring readily to the mind of every lawyer. And the rule has application to divorce cases, and to matters collateral thereto, equally with all other cases, save that as authorized by the statute, and as dictated by that tender solicitude for the welfare of children by which the courts should ever be actuated, a change may be made, whenever adequate cause arising out of changed conditions shall be made to appear." (Citing many authorities.)

We need not go far afield to sustain this principle, for it is settled by Section 756, L. O. L., reading in part thus:

"The effect of a judgment, decree or final order in an action, suit or proceeding before a court or judge thereof of this state or of the United States, having jurisdiction to pronounce the same, is as follows:—

"1. In case of a judgment, decree or order against a specific thing, or in respect to the probate of a will or the administration of the estate of a deceased person, or in respect to the personal, political or legal condition or relation of a particular person, the judg-

ment, decree or order is conclusive upon the title to the thing, the will or administration, or the condition or relation of the person.''

The order of February 3, 1913, therefore, granting the exclusive custody of the son to his father, the defendant, was final and conclusive in the absence of an appeal therefrom and can be changed or superseded only by a showing that for some reason the father is not competent to care for the child or that some condition has arisen rendering his further care and custody by the father inimical to the child's welfare.

5. The burden is upon the party, the plaintiff here, seeking to overturn the arrangement made by the order of February 3, 1913, for she is the moving party.

6. She contends in her affidavit that she was induced to consent to the modification embodied in that order by the representations of the defendant's attorney to the effect that the change was merely formal, for the purpose of giving the defendant a better showing in the way of balancing the fact that she had obtained the decree of divorce. She is contradicted in that matter by the circumstantial affidavits of the then attorney of the defendant. These affidavits are to the effect that after the divorce had been granted, the defendant went on a business trip to California; that on his return he obtained certain documentary and other evidence which he claimed reflected adversely upon the character of the plaintiff and tended greatly to show her lack of qualification for the care and custody of the child, which evidence was shown to her attorney, who in turn consulted his client, the plaintiff, about it and notified her of the proposal of the defendant to make it a ground for his application to the court for the modification unless she would con-

sent to such change in the decree; that after consulting with her attorney on the subject, she did consent, as already stated, signing the agreement not only herself but by her attorney also, and the modification was accordingly made, as stated. It is not necessary here to inquire whether the defendant's showing mentioned in the attorney's affidavits was true or false. It is not before us and we are not called upon to investigate it. The affidavit which merely alludes to the general nature of the defendant's claim is considered in rebuttal of the plaintiff's contention that she was tricked into giving her consent to the decree she now seeks to have modified. Her then attorney is not produced to contradict this statement and the weight of the testimony moves us to say that the decree of February 3, 1913, was entered with her consent and is valid. Moreover, she makes no formal attack upon the decree except by her innuendoes in her affidavit. She did not appeal from that decree. Consequently, we must hold it to be a valid exercise of the power of the court.

7. Concerning the actors in this domestic tragedy, the record shows that the parents were unable to agree in their affairs; that bitter quarrels were prevalent between them and that the defendant had prepared to sue for divorce and the custody of the child. In pursuance of some negotiations he declined to file the complaint, but he and the present plaintiff went together from Portland to Oregon City in his automobile, where the summons and complaint were served upon the defendant, as they sat together in the car in front of the courthouse. The plaintiff's present husband also instituted a suit against his then wife for divorce. The latter defendant not only resisted the divorce, but instituted an action against the plain-

tiff in this suit for alienation of her husband's affections. After the modification of the decree relating to the custody of the child, the present plaintiff absented herself from the state. For a time she lived at Vancouver, Washington, and would come to visit the boy on Sundays. She also lived in Seattle and when the child was taken ill with appendicitis and was in the hospital in Portland she went there and remained with him until he was convalescent. Likewise, she traveled in California, being absent from the state on that trip for about nine months. She contends that she was put off with excuses when she desired the child to visit her, so that his visits became less and less frequent. The defendant says that while she was at Vancouver and in that neighborhood she was never denied her requests to have the child visit her and he was sent to see her, not always on the particular date she demanded, but as soon as convenient thereafter. She complained that when she was allowed to visit the boy she was never permitted to see him alone, but always in the presence of some third person, and that when he came to Vancouver he was accompanied by some custodian, sometimes by his paternal grandfather and sometimes by his nurse. It turned out, however, that the nurse in question was her warm personal friend and she testified in substance that there was no one with whom she would rather have the child. It appears by the record that the defendant was married again and afterwards separated from his second wife. It is amply shown, however, by the testimony and by affidavits in the record, that through all these troubles the defendant had devoted himself to the care of the boy and his training, so that he has grown to be a very manly, lovable child. The great weight of the testimony also

is that the defendant has taught his son to respect and love his mother.

Both parties are amply able financially to provide for the welfare of the child. The defendant maintains a home in a very respectable neighborhood in Portland and is shown to be surrounded by excellent people. The boy's playmates mainly live in that neighborhood and his friends are there. Even the mother says:

"Mr. Merges is abnormally fond of the child. I have never at any time denied that he was abnormally fond of the child. In fact, it is almost a mania."

She says, too, that the child is afraid of his father. But she is utterly alone in this statement. No other witness or affiant says anything of the kind. The consensus of those who have spoken on that subject, except herself, is that father and son are extremely fond of each other and that the control of the father over the son is by means of affection and not force. To sum up on this point, it is plain that since the decree of February 3, 1913, no material change has occurred in the father's ability or inclination to care for the child in the best possible manner. If he was fit then to have the care of the child, he is fit now. The mother voluntarily relinquished the custody of the child. Her voluntary absence from the state and her marriage to her present husband do not detract from the finality of the former decree or depreciate the excellence of the defendant as a caretaker for his son. At least, they do not turn the scale in her favor or aid her in her effort to show that new conditions have arisen requiring a change of custody for the minor. To take him from the devoted care of his father, under whose tutelage he has been for seven years, with such excellent results in the child's con-

duct, and to put him in the home of a stepfather, under the circumstances of the case, would be to disrupt the foundations of his character, to the great hurt of the child. As already intimated, a vein of acrimony toward each other runs through the personal statements of the two parents. A divided custody of the boy would tend to intensify rather than to allay this, and he would be the innocent sufferer on account of it. He lived happily and with excellent results in charge of his father under the decree to which the mother advisedly gave her consent. It is best under the circumstances to let well enough alone until new conditions intervene to disturb the status established by that decree. The determination entered February 3, 1913, should not be disturbed, and so far as it has been affected by the one of June 12, 1919, the latter decree should be reversed and one entered giving to the defendant the exclusive custody of the child.

Thus far we have proceeded upon the consideration of the best welfare of the boy, relegating to a secondary place the preferences and caprices of the parents, whether they amount to mere captious and quarrelsome contentions or whether they are founded in sincere love for the child. The father ought not to be deprived of the society of the son upon whom he is lavishing such a wealth of affection. No matter what the conduct of the plaintiff may have been, we cannot attempt to quench the flame of maternal love which exists in every mother's heart, and she ought to be privileged to see the child and visit with him. Some reasonable concession ought to be made in that direction. As a working basis, therefore, upon which the parties shall act, a decree will be entered to the effect that the custody of the child shall be given to

his father, the defendant, with the proviso that the plaintiff may have the child with her to the exclusion of the defendant during the first half of the summer vacation of the Portland, Oregon, public schools, and during Saturday and Sunday of every alternate week of the remainder of the year, beginning with the Saturday next after the filing of the mandate of this court in the Circuit Court. The decree will be in such general terms, with the admonition to the parties that the law is, in such cases, that if new conditions arise rendering it desirable, in the judgment of the court, considering the best interests of the child, that a change should be made in his custody, the court is open on the application of either party to bring about such a change. The plaintiff and the defendant have been separated. They should lay down their rages, revenges and resentments, in the interest of the child. They should not make his care or custody the occasion for continued bickering. They ought to have more regard for his welfare than to cloud his life with constant quarreling. It is impracticable further to lay down specific hours or days when the mother shall see her son. Forced upon us as this dispute is by the contentious estrangement of the parents, we are obliged to devise a *modus vivendi*, whereas the parties in the exercise of common sense ought to settle it themselves by mutual concessions. If they have genuine regard for the welfare of their own child, they will act reasonably and not trouble the court with captious litigation. They should withdraw their own personalities from the contest and so conduct themselves as reasonable people that something may be saved from the wreck of their home, for the benefit of the boy.

The decree of the Circuit Court will be reversed and one entered in accordance with this opinion, with the further provision that neither party recover costs or disbursements from the other.

REVERSED.   DECREE RENDERED.