Argued November 30, affirmed December 27, 1921.

## JOHNSON *v.* JOHNSON.

(202 Pac. 722.)

**Divorce—Question as to Custody of Children Determined According to the Welfare of the Children.**

1. In divorce suit, the principal question with reference to the custody of the children is the question of what is best for the children.

**Divorce—Modification of Decree as to Custody of Children so as to Award Husband Custody During Portion of Year Held Proper.**

2. Where decree, granting husband divorce from wife for desertion, awarded custody of infant children to the wife subject to the husband's right to see and be with the children at designated times, the modification of the order with respect to the custody of the children, giving husband custody during a portion of the year, *held* proper, in view of evidence that the wife and her mother with whom children were living were seeking to destroy the affection of the children for the father, and the absence of evidence that the father had ever been other than a kind and affectionate father.

From Multnomah: JOHN McCOURT, Judge.

Department 1.

This is an appeal from a supplementary order of the Circuit Court modifying a former order in regard

---

For authorities discussing the question of denial of custody of child to parent for its well-being, see note in 41 **L. R. A. (N. S.)** 564.

to the custody of the minor children of plaintiff and defendant.

The history of the case is as follows: In March, 1919, plaintiff obtained a decree of divorce from defendant on the ground of willful desertion, and in said decree the custody of the two minor children of plaintiff and defendant, Violet, then aged seven years, and Geraldine, aged six years, was awarded to defendant, subject to the right of the plaintiff to see and be with the children at certain times designated, the order being as follows:

"That the care and custody of said children is hereby awarded to the defendant, subject, however, to the right of the plaintiff to visit said children on one day of each and every week, excepting Mondays and Thursdays. When such day selected by plaintiff is a school day, he shall see the children and have them with him between the hours of 3 and 5 in the afternoon. When such day is a Saturday or a holiday, he shall see them and have them with him between the hours of 1 and 5 in the afternoon. Plaintiff shall give notice by letter or by telephone to defendant or to some person at the home of defendant and such notice shall be given one day in advance. That the plaintiff is entitled to this privilege without let or hindrance from the defendant or from any other person, and plaintiff shall have said children with him away from said home. That the said children shall not be taken away from the county of Multnomah, State of Oregon, without serving notice upon plaintiff and an order upon said notice obtained from the court except that said children may during summer school vacation be taken out of Multnomah County upon notifying defendant of their whereabouts.

"That the plaintiff shall pay for the care and custody and support of each of said minor children the sum of $20 a month on or before the 10th day of each month hereafter until said children shall have arrived at the age of 18 years."

In May, 1919, a motion was filed by defendant asking that the previous order be modified so the plaintiff would not be permitted to take the children from her residence, which was with her mother, Mrs. Annabelle Steele, in the City of Portland. The motion was accompanied by affidavits to the effect that the children were of delicate organization and of frail health, and in such fear of their father that upon one occasion when he proposed to take them to his home, Geraldine, the younger child, had fainted, requiring the services of a physician to restore her. The plaintiff replied by an affidavit stating in substance that he had in good faith consented that the care and custody of the children should be awarded to the defendant, subject to the conditions set forth in the original decree. The affidavit continues:

"that both the defendant and her mother, Mrs. Annabelle Steele, have deliberately sought, by direction and indirection, to defeat the decree of this court in my seeing the said minor children and having them with me, not only before the decree of the divorce was entered, but since then both the defendant and her mother, Mrs. Steele, have adopted a course of giving one excuse after another against my seeing the children and having the children with me. They have instilled into the minds of the children fear of me and have wrought upon the children's mind to such an extent that the children are in fear of their father.

"That ever since this suit was filed, I have been unable to be alone with my children. The influence of the mother of defendant, Mrs. Annabelle Steele, both over the defendant, Ethel B. Johnson, and the children, is so great that she dominates all their course of actions. Mrs. Steele is a person of strong character· and shows her likes and dislikes in such a positive manner as to control her daughter and her grandchildren. Ever since the above-entitled case was instituted and particularly since the decree of

this court was entered, Mrs. Steele has, whenever I called on said children, stood guard over said children and has continuously, while I have been calling on said children, signaled the children in different ways, directing their actions toward me; that I know of my own knowledge that said children are influenced against me by Mrs. Steele and that I cannot inculcate into said children a love for their father while they are dominated by their grandmother, Mrs. Steele. That I sincerely believe that it would be for the best interest of said children to have the children placed in the care and custody of a third person or have said children remain in the temporary custody of the defendant, Ethel B. Johnson, provided the defendant secures for them a home away from Mrs. Steele.

"On March 4, 1919, when I called on said children and sought to have them play a Christmas game, I discovered Mrs. Steele signaling to the children to stop the play. That on said occasion Mrs. Steele began hinting as to my staying overtime with my children, causing embarrassment both to me and the children.

"That every time I called thereafter either Mrs. Steele or some friend of hers was present in the house while I was calling on my children; that I have never been able since the entry of the decree to take my children out; when I asked the children to come with me, the children refused to go and on one occasion I found Mrs. Steele shaking her head to the children when I asked the children to come out with me, and at that time both the weather and their health was favorable. That every time I call I am either ordered into a certain room or hindered by some statement of Mrs. Steele against my right either to see the children or to take them out.

"That on Saturday, April 26, 1919, I notified the defendant, Ethel B. Johnson, in writing that I wanted to see the children on the following Saturday, May 3, 1919, that being my day off, and also stated that I desired to take them out if the weather and their health was favorable; that when I called on Saturday,

May 3, 1919, there was no response to my four rings to the door bell.

"The foregoing are examples only of the many instances of my inability to either see my children with freedom or to take them out. That since September 12, 1919, I have never on a single occasion been able to have my children with me away from either their mother or their grandmother Mrs. Steele, although the children have been going to school and in particular have been going to Sunday-school on Sundays.

"That I believe from my own observation and have been informed and upon such information allege that it is the determination of both the defendant, Ethel B. Johnson, and particularly her mother, Mrs. Annabelle Steele, that I shall not be permitted to have the children with me.

"That in further support of this affidavit and of the motion filed herein, the attention of Honorable C. U. GANTENBEIN, Judge presiding at the trial of this case, is called to the attitude of the defendant, Ethel B. Johnson, upon the hearing and conferences in his chambers before the decree was entered."

The defendant filed an affidavit denying in general terms the showing by plaintiff. At the final hearing the court made the following order:

"It is considered, ordered, adjudged and decreed that the decree heretofore entered in this cause with reference to the care of the minor children of plaintiff and defendant, shall stand unmodified, and be in full force and effect, provided, however, that in the event of the refusal of the defendant to permit the plaintiff to see and be with his children, in accordance with said original decree, the plaintiff shall not be required to pay the support money required by said decree during the refusal of defendant to allow said plaintiff to see and be with said children, as provided in said decree."

In December, 1919, the defendant moved the court for an order setting aside so much of the decree as

provided that plaintiff should not be required to pay alimony during the refusal of defendant to allow him to visit and be with his children, and to reinstate the provision to require him to pay alimony at the rate of $40 per month.

The matter came on to be heard before Hon. JOHN McCOURT on September 2, 1920, and a decree was entered so modifying former decrees as to provide that the care and custody of the children should be awarded to the defendant for the period beginning September 1st, each year and ending June 21st, following, and requiring plaintiff to pay the sum of $40 a month for their support during that period. For the remainder of the year plaintiff was to have their care and custody, provided that he should furnish suitable facilities for the comfort of children of such tender years. It was also ordered that during the period in which the respective parties should have the custody of the children the party not having such custody should have the privilege of visiting the children not more than twice a week, and that the party having such custody should use all reasonable efforts to make the visits of the other agreeable and enjoyable; further, that plaintiff should pay the costs of any medical or surgical services necessary for the health of the children. From this order the defendant appeals.        AFFIRMED.

For appellant there was a brief and oral argument by *Mr. Oliver M. Hickey.*

For respondent there was a brief and oral argument by *Mr. Gus C. Moser.*

McBRIDE, J.—1, 2. At the outset it should be remembered that in the original decree defendant was

adjudged to be the party in fault by willfully deserting her husband. In such case, having by her own act broken the home ties she is not in an advantageous position to ask for any particular sympathy from the courts for herself personally. The principal question is: What is best for these children? The judges of the Circuit Court, who have heard these applications, no doubt had an opportunity to see the parties and appraise their personalities which we have not, but there is nothing before us indicating that the plaintiff had ever been other than a kind and affectionate father. When, therefore, it is claimed that three months after the divorce one of the children was so frightened at his presence and offer to take her out that she fainted, we are impressed with the idea either that the prostration was the result of other causes or that her condition of mind was due to sinister causes working to detach her affections and trust from her father; perhaps the latter is the correct assumption. It is not for the good of these children that their affections should be so detached from the parent whose hand must to a great extent furnish their support until they are of age. And the fact, if it be a fact, that this prejudice exists shows bad faith either upon the part of the mother or members of her family. The court did right in so directing the custody of the children that they will have an opportunity of knowing that their father is not an ogre, the sight of whom is sufficient to drive them into hysterics. If we consider the feelings of the parents, we must assume that both love their children and have an equal interest in their welfare. If we consider the welfare of the children, we are of the opinion that they should be placed in such custody as will best promote that acquaintance with each parent that

will beget love and respect. This will not be done by leaving them constantly in such associations as are evidently seeking to detach their affections from their father.

The decree of the Circuit Court is affirmed.

                                                    Affirmed.

Burnett, C. J., and Harris and Rand, JJ., concur.