Argued October 31, modified December 29, 1949

# KELLOGG *v.* KELLOGG

213 P. (2d) 172

*D. L. Carter,* of Weiser, Idaho, argued the cause for appellant. With him on the brief was Herbert W. Carter, of Salem.

*R. D. H. Swindley,* of La Grande, argued the cause for respondent. With him on the brief were Dixon & Burleigh, of La Grande.

Before LUSK, Chief Justice, and BRAND, BAILEY, HAY and PAGE, Justices.

HAY, J.

The parties to this suit intermarried April 10, 1941. On June 7, 1946, the Circuit Court for Union County, at the suit of plaintiff husband, entered a default decree dissolving the marriage and awarding plaintiff custody of Sharon Marie Kellogg, the only child of the parties, then aged four years, and giving defendant the right to visit said child "on reasonable occasions". On May 13, 1948, plaintiff moved the court to modify the decree so as to give him exclusive custody. The motion was heard upon affidavits and testimony adduced by both parties. On September 9, 1948, the trial court modified the decree by awarding sole and exclusive custody to plaintiff, and denying defendant all rights of visitation. Defendant appealed.

It appears from the evidence that, since the divorce, both parties have remarried. Plaintiff is a pre-medical student at Eastern Oregon College; his present wife is employed in a bank at La Grande. They reside at Cove, about fifteen miles from La Grande, with plaintiff's parents, Dr. and Mrs. Edward Kellogg. In April, 1946, plaintiff took the child from the defendant at Weiser, Idaho, where the defendant and child were living, in a single hotel room, with Oscar Swanson, whom defendant has since married. Since April, 1946, the child has been continuously in plaintiff's custody. During the period from April, 1946, to July 19, 1948, the date of the hearing upon the present motion, defendant visited the child only five times. On several occasions, she passed through La Grande on her way to visit her present husband's parents, and might have stopped over to see the child if she had wished to do so.

There was credible evidence that the child's mind is obsessed by fear, which apparently springs from her experiences with her mother and Swanson at Weiser. She is emotionally quite disturbed by her mother's visits, and appears to be especially afraid that "Oscar" will come and get her. There was testimony on the contrary, tending to indicate that the child was well cared for and happy while with her mother, and had no fear of Oscar. The trial judge, in a memorandum opinion, said, in part:

"* * * There is no question but what the mother's visitations have a tendency to upset the child as well as everyone else concerned. The question of the restraint and nervousness and general upsetting is a question which is no doubt, debatable. It would be difficult to say that it was entirely the fault of the plaintiff, and by the same token it would be difficult to say that it was entirely the fault of the defendant, but one thing is unquestionably true and that is that in the tug of war between these divorced parents for the affections of the child the child does become emotionally upset when the mother comes around."

A detailed statement of the evidence is unnecessary. It is sufficient to say that the defendant herself seems to be of a highly emotional temperament, and that her visits have been emotionally very disturbing to the child. On one such visit defendant was accompanied by her husband Swanson, whose presence was greatly resented by plaintiff. This resulted in an angry controversy in the presence of the child, which, of course, tended to aggravate her nervousness.

Under our statute, section 9-914 (1), O. C. L. A., as amended by chapter 228, Or. L., 1947, the court, in awarding custody of children in divorce cases, must, unless it is otherwise manifestly improper, give pref-

erence to the party not at fault. Nevertheless, this court has held in numerous cases that children of tender years, particularly girl children, should be awarded to the custody of their mothers, even when the mother is the losing party, unless she is morally unfit. *Barnes v. Long,* 54 Or. 548, 104 P. 296, 25 L. R. A. (N.S.) 172, 21 Ann. Cas., 465; *Griffin v. Griffin,* 95 Or. 78, 187, P. 598; *Wells v. Wells-Crawford,* 120 Or. 557, 251 P. 263; *Borigo v. Borigo,* 142 Or. 46, 18 P. 2d 810; *Sachs v. Sachs,* 145 Or. 23, 25 P. 2d 159; *Baier v. Baier,* 172 Or. 83, 139 P. 2d 562; *Leverich v. Leverich,* 175 Or. 174, 152 P. 2d 303. The divorce decree in the present case, however, gave custody to plaintiff. Before any change in custody is made, it must be shown that, since the entry of the decree, there has been a change in conditions affecting the welfare of the child, and that the proposed change in custody would be for the child's best interests. *Borigo v. Borigo,* supra; *Leverich v. Leverich,* supra; *Lingel v. Maudlin,* 188 Or., 212 P. 2d 751. The burden of making such showing is upon the party seeking the change. *Merges v. Merges,* 94 Or. 246, 186 P. 36. Defendant failed to sustain that burden. She argues before this court that plaintiff, moved by animosity toward her, is influencing the child to hate and disrespect her, and that this fact is a sufficient circumstance in itself to warrant a change of custody. We agree that, if this were true, it might be so. *Johnson v. Johnson,* 102 Or. 407, 202 P. 722. However, while the parties undoubtedly are very bitter toward each other, we do not think that the evidence establishes that plaintiff is influencing the child to hate or disrespect its mother.

Plaintiff and his present wife are rearing the child in a home of culture and refinement, under conditions

conducive to her present and future well-being. The trial judge's view of the evidence impelled him to hold that the child's best interests required that her custody should be continued in plaintiff. We concur in that view.

The trial court's decision to deny defendant all access to the child presents a more difficult question than the other. Two experienced psychiatrists testified on behalf of plaintiff. One of them, basing his testimony partly upon psychiatric observation of the child and partly upon the testimony of the other witnesses, stated that he was of the opinion that the mother should not be permitted to visit the child. The other, basing her opinion principally upon the testimony, was somewhat less positive than her colleague, but felt that, if the child's fears "were going to continue to be developed and enlarged", the mother's visits should be discontinued. The trial judge, we think, gave considerable weight to the testimony of these experts.

■■ No doubt, if the interests of the child clearly require such drastic action, the court has power to deny access to the child to either or even to both parents. Nelson on Divorce, 2 ed., section 15.26, text and note 14. But ordinarily, a parent's privilege of reasonable access may be regarded as a right, and will not be forfeited unless the welfare of the child will be seriously affected by its exercise. Id., notes 8 to 12, inc.

> "* * * No matter what the conduct of the plaintiff may have been, we cannot attempt to quench the flame of maternal love which exists in every mother's heart, and she ought to be privileged to see the child and visit with him. Some reasonable concessions ought to be made in that direction * * *"

Burnett, J., in Merges v. Merges, supra (94 Or. 246, 258, 186 P. 36).

■■ In depriving defendant of the privilege of visiting her child, the trial judge acted with great reluctance. As we have shown by quotation from his memorandum opinion, he was unable to lay the blame for the child's nervous condition wholly upon either parent. Upon the present record, we feel that defendant should not be denied the right of visitation. For the present, her visits to the child should be at the home of Dr. and Mrs. Kellogg, at Cove, and should be confined to one non-school day in each month. She should be required to give Dr. and Mrs. Kellogg at least five days' written notice of her intention to make any such visit, and should be required to cooperate with them in arranging for substitute dates in the event that any proposed date is not reasonably convenient for them. In her visits to the child, she should not be handicapped by the presence of either plaintiff or his wife, or of any third person. Her husband, Oscar Swanson, should not be allowed to visit the child at any time, either alone or with defendant. In the event that Dr. and Mrs. Kellogg do not wish to permit such visits to be made in their home, or, if hereafter they wish to be relieved of the responsibility of permitting such visits to continue at their home, the trial court will select the home of some suitable person at Cove, Oregon, at which such visits shall be made thereafter. In such event, similar notice as above shall be given by defendant to such person of her intention to visit the child, and plaintiff shall deliver the child to such home in due time for such visit. Plaintiff will be enjoined and restrained from causing or permitting any interference with or interruption of defendant's rights of visitation as aforesaid. Violation of the requirements of the decree, as modified, may be punished as a contempt of court, and failure on the part of either

party to comply in good faith with such decree may constitute ground for reconsideration of the decree either in respect of custody of the child or of the extent of the right of visitation. *Levell v. Levell,* 183 Or. 39, 190 P. 2d 527; *Lingel v. Maudlin,* supra. The trial judge, if and when he is satisfied that the best interests of the child will not suffer thereby, may at any time, on motion of defendant, further modify the decree by permitting defendant to have the child in her care outside of the Kellogg or other home on the occasion of any regular visit for such period not exceeding five hours, as he may see fit to grant.

The cause is remanded for the entrance of a decree modified in accordance with this opinion. No costs will be allowed to either party.