Argued January 26, affirmed February 16, 1955

# BOGH *v.* LUMBATTIS (formerly BOGH)

280 P. 2d 398

299

*Walter T. McGuirk*, Portland, argued the cause and filed briefs for appellant.

*Joseph H. Page*, Portland, argued the cause and filed a brief for respondent.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

WARNER, C. J.

This matter comes to this court upon the motion of the defendant-appellant, Mary J. Lumbattis, formerly Mary J. Bogh, for an order modifying a divorce decree with respect to the custody of the minor daughter of the parties. Although personally served in the divorce suit, the appellant made no appearance. After the trial on February 13, 1953, the plaintiff-respondent, William M. Bogh, obtained a favorable decree wherein, among other things, he was unconditionally awarded the care, custody and control of the only child of the parties, then about four years of age.

Shortly after the entry of the divorce decree, the defendant and her present husband hastened to nearby Stevenson, Washington, where they went through a marriage ceremony on March 3, 1953. Immediately afterward they returned to an apartment near the army air base in Portland where Mr. Lumbattis was a sergeant. They continued to live together until September 12, 1953, when they effected a legal union.

Once thus established in an atmosphere of marital regularity, the defendant in October 1953, about nine months after the Boghs were divorced, hurried to the court she had refused to enter in February in a belated effort to secure the exclusive custody and control of the child and to compel plaintiff to contribute $75 per month to the child's support. From an order denying her motion for modification, the former Mrs. Bogh appeals.

At the threshold of this proceeding, appellant is met with a rule of law which must be successfully hurdled before this court can give consideration to a plea for modification respecting the custody and control of the minor child.

An applicant for modification must show there has been a change in the conditions and circumstances since the last order respecting the child's custody and that such change is adverse to the child's welfare. The petitioner must further demonstrate that the change of custody proposed would be to the child's benefit. The necessity for such change in this case, if any, must have become evident between February 13, 1953, the date of the decree, and October 2, 1953, the date when the motion for modification was filed. *Wilson v. Wilson,* 199 Or 263, 266, 260 P2d 952; *Sakraida v. Sakraida,* 192 Or 217, 226, 217 P2d 242, 233 P2d 762; *Leverich v. Leverich,* 175 Or 174, 179, 152 P2d 303. The burden of

showing a change of conditions warranting a change of custody rests upon the party seeking the modification, in this case upon the mother of the child. *Gibson v. Gibson,* 196 Or 198, 213, 247 P2d 757; *Leverich v. Leverich,* supra, at page 180; *Kellogg v. Kellogg,* 187 Or 617, 621, 213 P2d 172.

■ It may be conceded that there have been some changes in the respective situations of the parties since the entry of the decree. Some militate against the claims of the child's mother. None justify our holding that there has been such a change in circumstances and conditions warranting a modification of the decree respecting the child's custody.

Mrs. Lumbattis had deceived and lulled Bogh into a false belief that she was thinking of abandoning her new-found husband and returning to the Bogh family homeplace. He apparently was seriously intrigued and beguiled by defendant's blandishments. This was fortified by his eagerness to restore his family to its before-divorce status as he had labored so hard to do before the divorce when he learned the extent to which Mrs. Bogh's indiscretions had carried her in her infatuation for Lumbattis. Indeed, after her marriage to the second husband and as a part of her design to obtain what she had lost by the divorce, she so trafficked on the credulity of Bogh that he voluntarily relinquished to her the title to the real property which the court had given him by the divorce decree.

As an extra incentive to the possible restoration and reunion of his former family, Bogh suffered the child to remain with its mother on a temporary basis. Soon he learned his mistake and demanded that the mother release the little girl to him. His efforts were forcibly resisted by the mother and accompanied by threats to bring her husband, Lumbattis, to her aid.

It was this last strenuous effort on the part of the father to take the child that hurried Mrs. Lumbattis to the circuit court for aid in retaining the custody of her little daughter. Only a few months before she had manifested a cold and callous indifference toward the child by failing to present her cause when the divorce suit came on for trial, if any she had, as a legitimate claimant to the right to be named custodian of the child. At that time she had remained silent, planning and hoping to thereafter circumvent the court's order by the deceitful ways and devices she later employed.

It is well to pause here and note that the record before us is sufficient to utterly destroy any faith and confidence in Mrs. Lumbattis' word. When the testimony is in conflict concerning the circumstances of the temporary custody of the little girl above referred to, we depend upon Mr. Bogh's version rather than that of his former wife.

We deem it appropriate and apt in summary of Mrs. Lumbattis' presentation to repeat here what this court said in *Leverich v. Leverich,* supra, at page 180:

"* * * She failed to sustain it [the burden of showing a change of conditions]. The only showing of changed conditions which she made was that she herself is now married to the man for whom she left her first husband, and that they have acquired a desirable residence. She made no attempt whatever to show that the child's father was in any respect incompetent to care for it. The party seeking the change should show that the other party has become unfit to be the custodian, or, at the least, that the proposed change in custody would result in the child's receiving better care than he is receiving from the other. * * *"

It is upon this temporary custody conferred on her by the minor's father that Mrs. Lumbattis depends to

demonstrate a change of conditions warranting a modification of the decree—a custody induced in the first instance by an imminent emergency, continued by the plaintiff because of defendant's representations that she might abandon Lumbattis and return to her former family, and later made more secure by forcible resistance to Mr. Bogh's efforts to take the child to his home to be under his care. Bogh's home was then with his former mother-in-law, with whom he had made satisfactory arrangements for the little one's care and guidance during his absences, and it is there he intends to take the child when she is restored to him.

Moreover, the defendant mother assumes that in the relatively few months the child has been with her, it has been in an environment better suited to its welfare than could be supplied by the father. It is an assumption at odds with the facts.

In determining the question of relative betterment accruing to the child by reason of the proposed custodial change, we cannot, among other reasons, ignore the fact that if we give the infant to the mother, it will thereby be in the daily company of the defendant's husband. Sometimes the new husband of a child's mother makes for an atmosphere contributing to the child's welfare and betterment; but here the stepfather is the man who, by his seductive and meretricious conduct, took the child's mother from her home, alienated her parents and destroyed the unity and happiness which had theretofore prevailed in the Bogh household. His machinations were bold and brazen and a contemptuous affront not only to law and order but to the sanctity of the home and family. We are persuaded that the unclean hands of Lumbattis should have no further opportunity to touch and soil the fruit of the Bogh union.

. We cannot join in criticizing Bogh for making the emergency disposition of the child's custody as he did, no matter how vain his hopes or how futile his efforts to reunite his family. We do not condemn his motives, and we must decline to let his former wife convert his then actions, designed for the child's welfare, to her selfish purposes and advantage. In her effort to do so, she gives further evidence of what we hereinafter refer to as her moral instability.

We find that the circuit judge was correct in his finding that there was no change in the circumstances which would warrant a change in the child's custody as originally ordered.

██ Unlike the rule which limits our consideration of an allegation of a change in circumstances and conditions to facts occurring during the period between the date of the last decree and the date of the application for modification, we find it is not error for the court to proceed upon "new facts occurring since the rendition of the decree, considered in connection with facts formerly established upon hearing in the divorce case", when it turns to examine the qualifications of a successor custodian in a proceeding of this kind. *Griffin v. Griffin*, 95 Or 78, 92, 187 P 598. Such an inquiry can include "the conduct of the parties, the morals of the parents, their financial conditions, the age of the children, and the devotion of either parent to the best interest of the children" as being of controlling force in directing their custody. *Griffin v. Griffin*, supra.

Appellant leans heavily on a line of recent cases from this court properly stressing the importance of awarding the custody of children of tender years, particularly girl children, to their mothers, even when the mother is the losing party, unless she is morally unfit. *Gibson v. Gibson,* supra, 196 Or 198, 216; *Waldow v.*

*Waldow,* 189 Or 600, 614, 221 P2d 576; *Kellogg v. Kellogg,* supra, 187 Or 617, 621; *Ruch v. Ruch,* 183 Or 240, 244, 192 P2d 272.

The rule expressed in the cases above cited has been somewhat extended by condoning certain instances of a mother's marital indiscretions in order to secure to the child the benefit of maternal care and affection when it otherwise appeared that the mother was qualified to assume such responsibility. *Gibson v. Gibson,* supra; *Goldson v. Goldson,* 192 Or 611, 236 P2d 314; *Pachkofsky v. Pachkofsky,* 192 Or 627, 236 P2d 320. When such evidence also discloses that there has been a reformation, the claims of the repentant mother to custody are greatly enhanced. *Ruch v. Ruch,* supra, at page 244; *Leverich v. Leverich,* supra, 175 Or 174, 179; *Baier v. Baier,* 172 Or 83, 87, 139 P2d 562.

We have no disposition to retreat from the holdings found in those cases. On the other hand, it is not our intent to let the mere claim of maternal relationship close our eyes to the claimant's digressions from the accepted standards of motherhood, especially when they reveal the presence of moral instability and ways of social capriciousness inconsistent with the duties and responsibilities of a true mother to her child. Sometimes the presence of amorality in a parent is as deleterious to the welfare of children as the more positive presence of immorality. Here we find the conduct of the mother tinctured with the attributes of both.

■ The best interests of the minor are the governing criterion. What are the best interests have to be determined from the facts of each case. Indeed, it has sometimes become necessary for the court to separate a mother and child notwithstanding evidence of abundant affection and solicitude for the child and the ab-

sence of a taint of immorality on the reputation of the mother. *Kellogg v. Kellogg,* supra.

In *Gibson v. Gibson,* supra, we said at page 217: "In endeavoring to do what is best for the child, it is clearly our duty to take into consideration the suitability of each parent for the grave responsibility which it seeks. Suitability includes, as its most important element, character. *  *  *"

Here, however, there is no record of repentance and no show of contrition which enable us to condone the appellant's past marital transgressions, and no assurances that the underlying character weaknesses have been conquered or that her evident moral instability will not reappear to damage the child's future as it has already done harm to its welfare in the past.

In arriving at our conclusions, we have deliberately suppressed a recital of the facts which, in our opinion, gives them ample support. An extension of the evidence, so persuasive to us, as it apparently was to the learned judge below who saw and heard the parties, would be of no benefit to the profession. Moreover, we are mindful that there is always a possibility that the mother of the child may so redeem herself from the stigma attached to the unfortunate happenings of the past that it would be unfair both to her and to the child to have the details of yesterday's indiscretions unnecessarily perpetuated in this opinion.

The circuit court is affirmed.

Tooze, J., concurs in the result.