Argued September 16, affirmed November 9, 1960

# SHROUT *v.* SHROUT
### 356 P. 2d 935

*Robert M. Stults,* Roseburg, argued the cause for appellant. With him on the brief was William H. Jones, Roseburg.

*Gordon G. Carlson,* Roseburg, argued the cause for respondent. On the brief were Yates, Murphy & Carlson, Roseburg.

Before McALLISTER, Chief Justice, and SLOAN, O'CONNELL, GOODWIN and HOWELL, Justices.

McALLISTER, C. J.

This is a suit for divorce brought by the wife, Jean Shrout, against her husband, Clarence W. Shrout, in which the defendant filed a cross-complaint also praying for a divorce. Both parties sought custody of the two minor children, Donna Marie and Charles Harold. The complaint filed on February 24, 1959, alleged that Donna was then seven years of age and Charles was then six years old.

The decree of the trial court granted defendant a divorce, custody of both children and adjusted the property rights of the parties. The plaintiff has appealed only from that part of the decree which awarded custody of the children to her husband.

■ The trial judge placed the children in custody of their father because of misconduct of the wife involving other men. In about 1956, the plaintiff carried on an adulterous affair with another man for a period of several months. This affair was condoned by the husband but apparently had a lasting effect on the marriage and is relevant in appraising the fitness of the plaintiff to have custody of her children. *Norcross v. Norcross,* 176 Or 1, 155 P2d 562.

A similar affair with another man began not later than February, 1959 and continued until about July, 1959. During that period this case was pending and the parties were separated but both remained in Roseburg. The children were in custody of the plaintiff. The other man involved also lived in Roseburg, was married and had four children of his own.

The affair was carried on openly, the plaintiff going with her friend to a bowling alley, the movies, a rodeo and swimming at a public beach. Plaintiff spent some time in the man's apartment and he visited her at her mother's home. The children were not isolated from the affair but exposed to it. They were taken along when plaintiff and her friend went on picnics, to the movies and other places. On one occasion Donna, at her mother's request, brought beer from the refrigerator to the couple while they were lying on the bed in an upstairs bedroom of her mother's home. The boy Charles was also present on this occasion.

■ It is a universal rule, frequently stated by this court, that in providing for the custody of children, the controlling consideration is the welfare of the children —all other rules are secondary and of value only as they aid the court in deciding what is best for the children. Cases in which this principle has been stated include the following: *Lambert v. Lambert,* 16 Or 485;

*McKissick v. McKissick,* 93 Or 644, 653, 174 P 721, 184 P 272; *Merges v. Merges,* 94 Or 246, 252, 186 P 36; *Johnson v. Johnson,* 102 Or 407, 413, 202 P 722; *Rasmussen v. Rasmussen,* 113 Or 146, 148, 231 P 964; *Henry v. Henry,* 156 Or 679, 683, 69 P2d 280; *Van Doozer v. Van Doozer,* 181 Or 274, 277, 181 P2d 126; *Cripe v. Cripe,* 186 Or 502, 504, 207 P2d 1049; *Gallagher v. Gallagher,* 187 Or 625, 632, 212 P2d 746; *Bogh v. Lumbattis,* 203 Or 298, 305, 280 P2d 398; and *Muhler v. Muhler,* 220 Or 321, 349 P2d 661.

■ This court has also generally held that children of tender years, particularly girls, should be awarded to the custody of the mother unless she is morally unfit. *Fisher v. Fisher,* 133 Or 318, 320, 289 P2d 1062; *Baier v. Baier,* 172 Or 83, 87, 139 P2d 562; *Leverich v. Leverich,* 175 Or 174, 177, 152 P2d 303; *Richardson v. Richardson,* 182 Or 141, 143, 186 P2d 398; *Ruch v. Ruch,* 183 Or 240, 244, 192 P2d 272; *Cripe v. Cripe,* supra; *Goldson v. Goldson,* 192 Or 611, 621, 236 P2d 314; and *Wilson v. Wilson,* 199 Or 263, 260 P2d 952. This salutary rule should be followed whenever possible. However, it is not controlling and should be applied only when its application will be in the best interests of the children.

The plaintiff relies heavily on a line of cases which emphasize motherhood as a factor in deciding questions of custody and tend to minimize the effect of the moral imperfections of the mother. These cases include *Sakraida v. Sakraida,* 192 Or 217, 228, 217 P2d 242, 233 P2d 762, in which the following rule was stated:

> "* * * Our decisions recognize the general rule under which, in awarding custody of young children, preference is given to the mother, unless she is grossly immoral or has abused or grossly neglected the children."

Closely following the *Sakraida* case came *Goldson v. Goldson,* supra, in which the following statement was made:

> "*The moral unfitness of a mother sufficient to deprive her of custody must be such as to have a direct bearing upon the welfare of the child.* It is not for every act of indiscretion or immorality that she will be denied custody. The test is whether her conduct is so depraved, immoral, and wicked that to permit her child to remain in her custody would be injurious to its best interests." (Italics supplied)

The above statement was quoted or referred to in a number of later cases including the following: *Pachkofsky v. Pachkofsky,* 192 Or 627, 236 P2d 320; *Pick v. Pick,* 197 Or 74, 79, 251 P2d 472; *Gibson v. Gibson,* 196 Or 198, 216, 247 P2d 757; *Laurance v. Laurance,* 198 Or 630, 258 P2d 784; *Wilson v. Wilson,* supra; and *Wengert v. Wengert,* 208 Or 290, 293, 301 P2d 190.

The court did not explain precisely what it meant when it said that the moral unfitness of the mother, to be a relevant factor, must have a *direct bearing* upon the welfare of the child. We doubt that the court meant that the child must be aware of and understand the mother's immorality, but we think the statement is subject to that interpretation. If so, it is obviously unsound. In any event, we think the rule stated in *Goldson* distorts the relationship of motherhood as a factor in deciding what is best for the children and should be, and is, overruled.

■ We affirm the rule that not every act of indiscretion or immorality should deprive a mother of the custody of her children. In all cases motherhood is a factor to be given great weight in deciding questions of child custody. We only want to make it clear that any moral transgressions of the mother must be considered,

together with other relevant factors, in determining what is best for the children. We think that arbitrary rules that exclude immorality as a relevant factor unless it is "gross", "depraved", or "wicked" or unless it has a "direct bearing", serve only to hamper the trial courts in weighing all of the evidence and in arriving at a decision which will best promote the welfare of the children.

■ In the case at bar it is conceded that the defendant is a fit and proper person to have custody of his children. It is also conceded that except for her moral derelictions the plaintiff has been a good mother. The able trial judge in deciding this case from the bench summarized his views as follows:

> "We start off on the matter of custody with the presumption that young children should always go to the mother. The presumption in Oregon is extremely strong unless the court can find that—or unless the court finds that the conduct of one parent or the other is such as to be detrimental to the welfare of these children. The evidence in this case is uncontradicted that both parents are good parents. Prior to the separation and even following the separation all witnesses and all parties in this case agree that both are good parents. The only thing that has detracted from either of the parents is the fact that the court finds that the mother, plaintiff in this case, has been carrying on an affair with another man while both she and the other man were married and that this was done in front of the children. By that, I mean the children have been taken to movies; they have been taken to picnics; they have been taken to visit with the children of the interloper; they have been asked to bring beer to the bedroom to their mother and this interloper who they know only as Hal; and these things at the age of these children the court finds would be detrimental to the welfare and wellbeing

of these children. For that reason the custody of these children will be awarded to the defendant in the case with the understanding that this is always an open matter and that when the plaintiff in the case has rearranged her marital status to the point that she can show a change of circumstances consideration should be given at that time to whether the children should be returned to her."

In reviewing this case we are guided by the rule laid down in *Henry v. Henry,* supra, as follows:

"This court will not disturb the decree of the trial court as to the custody of the children when the case is purely one of fact and the evidence is sufficient to warrant the conclusion reached by the trial court."

The reasons underlying the foregoing rule are stated with great clarity in *Bennehoff v. Bennehoff,* 209 Or 224, 225, 304 P2d 1079, as follows:

"* * * In the difficult and delicate task of attempting to determine where the welfare of children lies as between conflicting claims of warring parents, the judge who sees the parties and their witnesses and listens to their testimony has a position of advantage over the justices of this court. This axiom of appellate court review, so often referred to in equity suits, is of prime importance in its application to a child custody case which involves, as does this one, an appraisal of the character, temperament, and disposition of the contending parents, some of the determining marks of which may reveal themselves to one who sees and observes the persons concerned but are not to be found in the typewritten pages of a cold record. The decision of the trial judge in such a case is, therefore, not to be lightly set aside."

We have carefully reviewed the record in this case and find ample evidence to warrant the conclusion reached by the trial court.

The decree is affirmed.