Argued January 21, reversed and remanded February 10,
reconsideration denied March 5, petition for review
denied March 27, 1975

IN THE MATTER OF THE DISSOLUTION OF THE MARRIAGE OF

DAHLMAN, *Respondent, and*
DAHLMAN, *Appellant.*

531 P2d 909

*Thomas D. Kerrigan,* Portland, filed the brief for appellant.

*Lewis E. Myatt,* Beaverton, argued the cause for respondent. With him on the brief were Myatt, Bolliger, Hampton & Tarlow, P.C., Beaverton.

Before SCHWAB, Chief Judge, and FORT and THORNTON, Judges.

THORNTON, J.

This is an appeal by appellant-husband from a decree of dissolution of marriage which awarded custody of the three minor children of the parties to respondent-wife.

The father's major contention is that the trial court failed to properly apply the guidelines set forth in *Tingen v. Tingen,* 251 Or 458, 446 P2d 185 (1968), relative to the factors to be considered in awarding custody of minor children in the event of divorce.

The parties were married in 1960. The three minor children born to the parties include two boys, now ages 7 and 14, and a girl, now age 12.

Whatever may have been the initial cause of the estrangement of the parties, the final breakup and separation occurred six months after the mother went to work as a real estate saleswoman for a Portland concern in June 1973, when she became romantically involved with her boss. The record establishes that the mother left the family home in December 1973

to cohabit illicitly with her boss, and that this liaison continued unabated until the end of May 1974, when the boss met an untimely death by drowning.

At the time suit was filed in December 1973 it was agreed by the parties that the court should award temporary custody to the father. The father, who is employed by a teachers' association, remained in the family home and proceeded, with the help of the children, to assume responsibility for the household. On several occasions when the father was out of the city attending teachers' conferences, the mother assisted in caring for the children.

The case did not come on for hearing until September 1974. Prior to the hearing the parties agreed that a custody study should be made by a marriage and family counselor employed by the Family Consultant Service of the Multnomah County Circuit Court, Department of Domestic Relations. The counselor conducted two interviews with the parties and the children —one in February 1974, the other in May or June 1974, after the mother's paramour had perished. Following both interviews the counselor in his report strongly recommended that the custody of the children should remain with the father. In addition to preparing and submitting two reports, which were received in evidence, the counselor was called as a witness by the father concerning his interviews. Relative to the February interview, the counselor testified on cross-examination by the mother's attorney in part as follows:

"* * * that the mother was totally committed and involved with her boyfriend * * * talking how he would be a better father and was involving the children in her life. She and her boyfriend were

taking the children out together * * *. And I was unable to get her to really relate to the current situation in terms of her separation or the children."

The mother testified that at the time of the February interview with the counselor she had taken the children along on only one date with her paramour.

All in all it appears that the father, while not perfect in all respects, performed his role as a homemaker with commendable skill and devotion during the time he had sole custody. Except for occasional night meetings and business trips, he arranged his work schedule so that he could spend all his spare time looking after the children.

The mother challenges the father's fitness to care for the children, and is critical of the father's absence from the home while at work. As already noted, the mother agreed that the father should be given sole custody of the children pendente lite. She was apparently satisfied with the father's fitness and care of the children while she was preoccupied in pursuing her extramarital romantic interest. It was only after the romance ended that the father's fitness was challenged.

According to the record both parents hold full-time positions. The mother has argued that the father's position requires that he attend out-of-town and local evening business meetings from time to time and would not be available to attend to the children. The record establishes that the work of both parties imposes such a requirement.

ORS 107.105(1)(a) provides:

"(1) Whenever the court grants a decree of

annulment or dissolution of marriage or of separation, it has power further to decree as follows:

"(a) For the future care and custody of the minor children of the marriage as it may deem just and proper. In determining custody the court shall consider the best interests of the child and the past conduct and demonstrated moral standards of each of the parties. No preference in custody shall be given to the mother over the father for the sole reason that she is the mother.

"* * * * *"

■■ While it is true that the mother's extramarital actions and relationship with her late paramour would not permanently disqualify her from being awarded custody, *Hogan v. Hogan,* 6 Or App 122, 486 P2d 1309 (1971), moral transgressions must be considered together with other relevant factors in determining what is in the best interests of the children. ORS 107.-105(1)(a); *Shrout v. Shrout,* 224 Or 521, 356 P2d 935 (1960); *Mace v. Mace,* 9 Or App 435, 497 P2d 677 (1972). Having studied the entire record it appears to this court that the father has clearly demonstrated the greater stability as a parent. He has proven experience in handling the children while he had custody from December 1973 to September 1974. Giving due consideration to each of the factors enumerated in *Tingen v. Tingen,* supra, it is our conclusion that the future welfare of these children would be best served by awarding their custody to their father, subject to reasonable visitation by the mother. *Ray v. Ray,* 11 Or App 246, 502 P2d 397 (1972); *Mace v. Mace,* supra.

Reversed and remanded.