Argued May 16; affirmed June 13, 1944

# LAYTON *v.* LAYTON

(149 P. (2d) 574)

Before BAILEY, Chief Justice, and BELT, ROSSMAN,
LUSK and HAY, Associate Justices.

*A. W. Norblad,* of Astoria (Norblad & Norblad, of
Astoria, on the brief), for appellant.

*William E. Walsh,* of Marshfield, for respondent.

BAILEY, C. J. On January 11, 1943, the circuit court for Coos county entered a decree granting to the plaintiff, Morris H. Layton, a divorce from the defendant, Phyllis Yvonne Layton, and awarding to the plaintiff the care, custody and control of Sharlene Ann, the minor daughter of the parties, then some months past four years of age, with permission given the defendant to visit the child ''at any and all times''. Thereafter, on March 25, 1943, the defendant filed a motion to modify the decree by granting her the care, custody, control and education of the child. The motion was supported by affidavits of the defendant and others and was resisted by the affidavit of the plaintiff. A hearing was had, at which both the plaintiff and the defendant, as well as two others, gave oral testimony. The court on June 17, 1943, entered an order modifying the original decree by committing to the plaintiff ''the legal care, custody and control of Sharlene Ann, the minor daughter of plaintiff and defendant, subject, however, to the provision that for two weeks beginning with the 20th of July, 1943, and for the two weeks beginning with the 20th of September, November, January, March and May of each year hereafter, the said defendant shall have the said minor child with her until the said child becomes of school age, when at such time the plaintiff, father of said child, shall have the care, custody and control of said child during the school months of each and every year, and the mother shall have the said child with her during the school vacation periods of said child''. And the plaintiff was ordered to pay to the defendant thirty dollars per month during the time the child was with the defendant. From the decree as thus modified the defendant has appealed.

The pleadings in the divorce proceedings are not before us, and therefore we are not advised as to the grounds on which the divorce was granted. Nor does the record here contain any of the evidence in those proceedings, except a copy of a letter written by the defendant to the plaintiff on September 15, 1942, and attached as an exhibit to the affidavit of the defendant in support of her motion for modification of the decree.

At the time of the trial of the suit for divorce the plaintiff and the defendant were residents of Marshfield, Oregon. The plaintiff had steady employment with a bakery in that city and had been employed by the same concern for six years. Sometime prior to September 15, 1942, Mrs. Layton, the defendant, had gone on active duty with the civil air patrol. From the time of the institution of the divorce suit up to the time of the trial, she was stationed at Brownsville, Texas.

In his opinion in the divorce proceedings, a copy of which the defendant has attached as an exhibit to her motion, the trial judge stated that he had been influenced in his decision concerning the custody of the child, "to quite an extent by the defendant's own testimony, and by that I mean by the letter which the defendant wrote to the plaintiff on September 15, 1942, . . . from Texas." Describing it, the court continued:

". . . This letter consists of approximately five pages of very fine writing, and I am struck by the fact that the letter almost entirely is devoted to her life and her new occupation. There is only one place in it that I can find that the child is mentioned at all, and that is this paragraph, 'Mother writes that you have Sharlene now, so hope you will write as often as she did and let me know how well you are managing.'

"I don't mean to say that I consider that the mother has lost her love for the child, but I do mean

to say that I believe in her enthusiasm for the new work that she went into, that she certainly overlooked the child and her husband to a certain extent. It seems to me that the letter itself brings out that fact.''

In another part of the opinion the trial judge made the following statements:

''I will say in this case that I am very glad that there has been nothing serious brought out against the morality and character of either of the parties.

\* \* \*

''Now, the question of custody of the child. A child of this age deserves the attention of its parents. I think that up until the time, approximately the time, that these parties were separated, probably they both gave the child at least reasonably good care. I think they both loved the child, and I don't think there is any question but what either one of them, if they had the child with them, would take reasonably good care of it, or as good as they could. They both cared for the child.''

The defendant, in the affidavit accompanying her motion for modification of the decree, stated that she was then employed as a stenographer at Marshfield, and that in the event that the court should modify the decree by giving her the custody of Sharlene Ann, she desired ''to return to Seaside, Oregon, and live at the home of my parents, and with the permission of this court, I should like to take the child with me there''; also, that she could obtain employment as a stenographer at Seaside.

In her affidavit and likewise in her oral testimony Mrs. Layton asserted that the right of visiting her child ''at any and all times'' was denied her by the plaintiff and by the woman who cared for the child

in his absence. She contends that she should be given the care and custody of Sharlene Ann because of the failure of the plaintiff to comply with the court's order in regard to permitting her to visit the child and because she, the defendant, is no longer with the civil air patrol and is able to provide a home for the child with the defendant's parents at Seaside, Oregon.

At the time of the hearing on the motion for modification of the decree the plaintiff and his daughter were living at the home of Mr. and Mrs. C. V. Robbins. Mr. Robbins was employed by an oil company in Marshfield. He and his wife were the parents of three sons, one twenty-six years of age, one twenty, and the other nine years old, and one daughter, twenty-four years of age. Their only child then living at home was the nine-year-old boy. Another young boy was being cared for in their home during the daytime, and a little girl during afternoons. There is no intimation that Sharlene Ann was not given the best of care and attention in the Robbins home.

After being divorced Mrs. Layton obtained employment as a stenographer in Marshfield. Every time she called at the Robbins home she was permitted to see her child. One week she visited Sharlene Ann six times. She was permitted to have the child with her on Saturday afternoons and during two Sunday afternoons, but the plaintiff refused to allow her to keep Sharlene Ann over night.

The divorce decree awarding the plaintiff the custody of the child, Sharlene Ann, provided that the defendant should have the right to visit her at any and all times. On the hearing for modification of the decree the circuit court realized that the order should be made more definite as to times for visitation. After

orally announcing his decision on the hearing for modification and before entering an order, the trial judge permitted the defendant to have Sharlene Ann with her for one month at Seaside. The order as entered gave to the defendant the custody of the child for six periods of two weeks each in alternate months during each year ''until the said child becomes of school age''. That arrangement, we assume, was due somewhat to the distance between Seaside and Marshfield.

During the hearing on the defendant's motion for modification of the decree, the following colloquy between court and counsel occurred:

''Mr. Norblad: May I ask the court and counsel, this lady [Mrs. Layton] has told me that there was a definite arrangement regarding the care of the child, there was to be a couple, and Morris, Mr. Layton, they were to have a home together and Sharlene was to be taken into that home—

''The Court: There was a great deal of testimony along that line, and the parties that were to take care of the child appeared and testified in court. We are now interested in any changes that may have occurred. I don't care to go into matters that have already been adjudicated.

''Mr. Norblad: Now, might I ask this: Was there any testimony in the former matter with reference to the mother of Mrs. Layton having had the custody of the child in Seaside?

''The Court: Yes, there was testimony on that. I might suggest that in order to give each of you a fair opportunity in case of an appeal, I would suggest that all the testimony in the former case be received in this hearing.

''Mr. Walsh: I am willing to so stipulate.

''Mr. Norblad: That would just mean a terrific expense that would serve no purpose. That door is closed, there is no question about that.''

Section 9-914, O. C. L. A., provides in part as follows:

"Whenever a marriage shall be declared void or dissolved, the court shall have power to further decree as follows:

"(1) For the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not in fault".

By § 9-915, O. C. L. A., the court is granted power, at any time after a decree is given and upon motion of either party to the proceeding, to set aside, alter or modify so much of the decree as may provide for the care and custody of minor children.

■ There is no fixed rule governing the awarding of custody of minor children. Each case must be decided largely on its peculiar facts. As a general rule, the decisions of this court reflect a strong tendency toward giving the mother custody of a child of tender age, especially a girl, unless the mother is "grossly immoral", or subjects the child "to abuse or gross neglect". In the instant case, the defendant filed her motion for modification less than two and one-half months after the decree was entered. The only change then in the situation of the parties was that Mrs. Layton had been released from the civil air patrol and had made arrangements with her parents for herself and Sharlene Ann to have a home with them at Seaside.

■■ We do not have the benefit of any evidence that was before the trial court at the time the custody of the child was originally awarded to the plaintiff, except the letter written by the defendant to the plaintiff from Texas on September 15, 1942. That letter contains no

indication that Mrs. Layton at that time was much concerned about her child. At the hearing on the motion for modification of the decree the circuit court had the advantage of observing both the plaintiff and the defendant on the witness stand, as well as Mrs. Robbins.

On the record before us we should not feel justified in disturbing the finding of the circuit court as to what is for the best interest of the minor child here concerned. The circuit court has at all times authority to modify its decree as to the custody of the child, if the facts warrant a change. The decree appealed from is affirmed.