Argued October 16; affirmed November 12, 1947

# RICHARDSON *v.* RICHARDSON

186 P. (2d) 398

*George Mowry,* of Portland (with John Mowry, of Portland, on the brief), for appellant.

*John W. Brugman,* of Portland (with Joseph G. Berkshire, of Portland, on the brief), for respondent.

WINSLOW, J., (Pro Tempore).

The parties hereto were intermarried February 28, 1942. To this marriage there was born one child, Jay Edgar Richardson, about four years of age at the time of the trial in the lower court. Almost immediately after the marriage, appellant and respondent moved into and made their home with appellant's grandmother. Very shortly after the birth of the child, appellant was inducted into the United States army. About this time respondent went back to work where she had formerly been employed. Thus the child was left largely in the care of his great grandmother. This condition continued to exist, except for a short period of time while appellant was stationed at Camp Adair, until respondent, the child and the grandmother moved to appellant's sister's home which was occupied not only by the sister but by appellant's mother, Mrs. Brown. While at Camp Adair, appellant obtained living quarters, and the family consisting of appellant, respondent and the child lived at Corvallis. They continued to live there until the spring of 1944. At that time appellant was transferred, and respondent accompanied him as far as San Luis Obispo, California, after which she returned to the home of appellant's sister and continued to live there until appellant returned from overseas in June 1946. After her return from California, respondent again returned to her position with Montgomery Ward & Company. Appellant's mother and sister being otherwise engaged, again the child was left largely in the care of his great grandmother.

While overseas, appellant lost his heart to a French girl; and, almost immediately upon his return, domestic difficulties ensued culminating in this suit, brought

by respondent against appellant for divorce, custody of the child and support therefor, and for certain property. Appellant, counterclaiming, likewise sought a divorce and the custody of the child. Upon the conclusion of the trial, the court entered a decree granting respondent a divorce, the custody of the child, $50 a month for the support thereof, and made certain property adjustments.

Appellant has appealed raising but a single issue herein, namely, as to whether or not the court erred in granting the custody of the child to respondent and, of course, adding that, if this court sees fit to grant custody to him, he be relieved of the payment of support money. The transcript of evidence is over four hundred pages. No good purpose would be served by setting out herein even a resume thereof. We shall, therefore, make very brief reference to certain portions of the evidence bearing upon the question presented.

■ The issue as to the custody of the child is somewhat simplified by the following factors: The child is of tender years and the mother, being otherwise qualified, should have custody. *Van Doozer v. Van Doozer*, 181 Or. 274, 181 P. (2d) 126; *Phillips v. Phillips*, 175 Or. 14, 26, 149 P. (2d) 967; *Sachs v. Sachs*, 145 Or. 23, 25 P. (2d) 159, 26 P. (2d) 780; *Pittman v. Pittman*, 3 Or. 553.

■ Again, the mother is not the party at fault and for that additional reason, unless otherwise manifestly improper, she should be given preference. O. C. L. A. § 9-914; *Van Doozer v. Van Doozer*, supra; *Norcross v. Norcross*, 176 Or. 1, 155 P. (2d) 562; *Henry v. Henry*, 156 Or. 679, 69 P. (2d) 280; *Lambert v. Lambert*, 16 Or. 485, 19 P. 459.

■ Moreover, appellant makes this concession in his brief: "The appellant has never questioned, and does

not now question, in any respect, the moral character or moral fitness of the respondent * * ." In fact, appellant bases his entire contention upon the proposition that respondent is mentally and physically incapable of properly caring for the child. In support of this contention, appellant asserts that respondent is suffering from a "maniac-like hyperactivity" and that this condition is "recurrent." Our attention is called to four different episodes occurring, as is contended by appellant, at intervals of about two years. A careful consideration of the evidence offered by appellant in support of his contention convinces us that the incidents have been greatly exaggerated. That respondent has had some nervous upsets is admitted. Much could be said about the conditions and circumstances under which Dr. Burkes made his examination and diagnosis. Even that we deem unnecessary.

What Dr. Burkes calls a "maniac-like hyperactivity," Dr. Middleton and Dr. Dixon call an "acute anxiety state," a condition which was very prevalent among the wives of soldiers, as well as among the soldiers themselves, during the war. Both Dr. Middleton and Dr. Dixon had respondent under observation and treatment. They both assert that the condition is not "recurrent."

Dr. Dixon gave the following testimony regarding respondent's condition:

"Q. What was Mrs. Richardson's trouble attributable to in your opinion?

"A. In my opinion the pattern of the anxiety state, not only in her case but as a general hypothesis in regard to it, is due to two factors; one, to a high degree of over-perfectionism in early training, thinking that they have to do things more precisely than the average person. They are of an in-

variably high intellectual level, which when subjected to psychological trauma yields uncertainty, doubt, and difficulty in adjustment. There is an intensification of their pattern producing this particular set of symptoms that we see here, a disorder of bodily function mood and not disorder of mind personality or bodily structure. You ask about general causes, and there is this effect that we have seen a good deal of during the war period. Patterns of this order are not the fault of any individual but a fault of changing and turbulent circumstances. We saw a great deal of it in the armed services; the families of the officers and of the enlisted men subjected to almost impossible living conditions, to a very high order of uncertainty to their environment, to economic distress, and all that. We saw that in our junior officers where the security financially was a great deal less than it was in the enlisted men who had some arrangement directly for that, and we saw these reactions a great deal in these families, the necessity of living in a home that is not their own. We have arrived at the conclusion often that more than one woman does not too successfully live in a home anyway, and it often is a contributing factor to have to live in a situation that they don't consider their own and they don't feel any related security to it.

"Q. You mention about these junior officers. Were you in the service, Doctor?

"A. I was.

"Q. Did you have an opportunity to observe the soldiers and service men and their families before going overseas?

"A. I had service in this field, and we had a great many junior officers and junior officers' wives with problems.

"Q. In your opinion, Doctor, is the plaintiff, Margaret Richardson, physically and mentally competent to care for and rear a child say four years of age?

"A. I feel so. I think even at the time that we initially saw her, without treatment she might have had episodes of distress where it would be difficult for her to alone handle that problem, but we have to regard those situations often as we would a person having any other illness, that they might be temporarily incapacitated during a period, but I feel at that time, even without the improvement that she has shown, that there was nothing that would contribute to insecurity to the child in its development period, and I feel that she has a great deal more insight into this thing and a great deal better grasp of handling this problem that she is dealing with now.

"Q. Based upon your knowledge of the case, Dr. Dixon, will you state whether or not in your opinion it is probable she will have a recurrence, and if so, under what circumstances is it likely to occur?

"A. Well, in my opinion she will not have a recurrence. The criteria by which we judge is by the insight of the individual into the reactions and their ability to handle situations without stress. I would call to attention, since the time we have felt recovery was fairly complete, that we have a series of crises to deal with that she has handled quite well."

Both Mrs. MacCoach, who raised respondent, and Mr. Anderson, who supervised her work while she was employed, vouch for her stability.

We hold, as the trial court found, that respondent is in all respects a fit and suitable person to have the care, custody and control of this child, Jay Edgar Richardson. It follows from the foregoing that the decree should be and the same is hereby affirmed, with costs and disbursements herein.