Submitted on briefs November 2; affirmed December 29, 1949

## GALLAGHER *v.* GALLAGHER

212 P. (2d) 746

*Glenn R. Jack,* of Oregon City, for appellant.

*Gallagher & Gallagher,* of Ontario, for respondent.

ROSSMAN, J.

This is an appeal by the defendant from a decree of the Circuit Court entered February 15, 1940, as modified by an order entered December 15, 1948. The decree had previously been modified by orders entered December 18, 1944, and February 17, 1942.

The decree granted Martin P. Gallagher, who was plaintiff in the suit which terminated in the decree, a divorce from his wife, Helen W. Gallagher, defendant in the suit, and custody of their minor child, Lynne. The proceeding, which resulted in the entry of the order attacked by this appeal, affects the custody of the child and is not concerned with the divorce. The mother, who was the defendant in the divorce suit, is the appellant, and the father is the respondent.

The order of February 17, 1942, granted the mother custody of Lynne "during the months of May, June, July and August of each year prior to the time said minor shall have arrived at school age, and thereafter during the summer and Christmas vacation period of each year, and the privilege of visiting said child at all reasonable times during the remainder of the year, so long as the defendant shall continue to lead a life of abstinence from the excessive use of intoxicating liquors; * * *." That order was affirmed in *Gallagher v. Gallagher*, 174 Or. 22, 146 P. 2d 768.

Shortly after the pronouncement of the decision just cited, both parties moved for a further modification of the decree. Each sought exclusive custody of the child. Then came the order of December 16, 1944, which was affirmed in *Gallagher v. Gallagher*, 178 Or. 223, 166 P. 2d 135. As stated in the decision just mentioned, the order of December 16, 1944, "denied both motions and approved the order entered on February 17, 1942,

'except for the current year the defendant shall not have the custody of said minor child during Christmas vacation, and furthermore, that during the periods the defendant has custody of said minor child the custody shall be at the home of Mr. and Mrs. Waddell, at Stayton, Oregon, until further order of the court, * * *.' ''

August 19, 1946, the defendant, that is, the mother, moved for a modification of the decree as modified by the above-mentioned orders. Her motion sought the sole custody of Lynne and an order directing the father to contribute monthly $50.00 for Lynne's support in the event the child's custody was awarded to her (the mother). Shortly after that motion was filed the father moved for an award of exclusive possession to himself. Those motions culminated in the order which the appellant (mother) now challenges.

The mother's motion was accompanied by an affidavit in which she stated that Lynne's happiness would be promoted if she (the mother) had exclusive custody and that, since the entry of the decree, "the plaintiff (father) has remarried and at the time of his marriage his wife was a widow and had one child and that subsequent to his marriage the plaintiff and his present wife have another child, and they are residing in a small home located in Ontario, Oregon; that I am residing alone with my parents in Stayton, Oregon, in a home that has ample room for a separate bedroom and adequate living quarters for said minor child." The plaintiff (father) accompanied his motion with an affidavit in which he stated: "During my services in the Army I was married and that my present wife has a child of approximately two years of age by her former husband who was killed in action in the recent war. That since our marriage there has been born

of the union another son, now four months of age. That since being discharged from the Army, I have returned to Ontario, Oregon, resumed my law practice and have built a home of my own. That the same is modern in all respects and adequate for our needs, * * * ."

After a hearing October 28, 1948, in the course of which seven witnesses, including the parties, testified, the court entered an order which states:

"The order of the Honorable Forrest L. Hubbard made on the 16th day of December, 1944, be and the same hereby is modified in the following particulars: That the minor child of the parties aforesaid shall remain in the custody of the plaintiff during the winter holiday season of each year and that she shall also remain in the custody of the plaintiff for 10 days after the close of the regular school year and be returned to plaintiff's custody 10 days before the beginning of the school year at Ontario, Oregon, or such other school or schools said minor may attend. That in all other respects, the order of said Judge Hubbard be affirmed."

It is the order just quoted which is challenged by this appeal. The defendant, in appealing from it, presents the following assignment of error:

"The Court erred in not granting the appellant's motion in that, all things being equal, the mother is entitled to the custody of a minor child."

"Divided custody is not for the best interests of the minor child."

We have read the transcripts of evidence with painstaking care and have bestowed similar attention upon the briefs. Our purpose was an earnest one to find a means whereby the parental discord which engulfs the mother and father of this child would not involve her in a repetition of this proceeding. We observe from the

record that Lynne, the innocent victim, is no longer deemed by her parents as the mere subject matter of this interminable legal maneuvering, but as about ready to step across the threshold of the courtroom door and become a witness; for, in the present instance, they stipulated that the presiding judge should interview her privately. It would be nothing less than a tragedy if this girl should be forced to take sides against either parent. Lynne was born August 11, 1938, and was ten years of age when the attacked order was made.

Although in reading the evidence we hoped to find a solution of the problems which have kept this suit in the courts for a decade, we have come to the reluctant conclusion that this case is another instance in which the judicial machinery cannot turn out a perfect product. The parties must accept less than they expect and be satisfied with it. The law is no alchemist and cannot transmute the circumstances in which the parties have chosen to live. Those circumstances preclude courts from doing more for them than has been done. The plaintiff lives in Ontario where he and his father maintain a well-established law practice. The defendant resides in Stayton with her parents, but earns her livelihood in nearby Salem. Ontario and Stayton are separated by three hundred miles or more, but the parents are separated from each other by something more impervious to solution than space. Their attitude toward Lynne and her upbringing stems in large part from deep-seated convictions which they cannot reconcile.

The plaintiff and his present wife, who appears to be an intelligent, tactful young woman, built the home in which they reside. It is new, well equipped and affords Lynne a room of her own. The house stands upon

a large lot which provides the children ample play areas. In the immediate vicinity are other girls of Lynne's age with whom she plays. Lynne has now lived in the neighborhood for several years and has acquired many friends.

When the plaintiff married the widow who is now his wife she had a child by her previous husband, who lost his life overseas while wearing the uniform of our country. She and the plaintiff are the parents of two children. All three of the children last mentioned are boys. Lynne has accepted them as brothers and the group of six has become welded together as a family. No distinctions are made and no discriminations are practiced. The evidence indicates the family is a happy one.

The defendant lives with her parents in Stayton in a dwelling which she described as ''a seven-room house * * *. It is an old-style house, very comfortable.'' She works in Salem and goes back and forth upon a bus line. At the close of her day's work she reaches Stayton at about 5:40 p. m. While she is at work Lynne's care falls upon the defendant's mother, ''seventy years old, but very active.'' Each year the defendant has a vacation of two weeks. In describing the neighborhood in which her parents' home stands, the defendant mentioned a girl, twelve years of age, with whom Lynn has developed a friendship. The defendant, in the summer in which she had the custody of Lynn, bought her a dog and a bicycle. She and her daughter spent some of their evenings swimming, and the defendant's vacation period at an Oregon beach.

During virtually all of Lynne's life she has been in custody of her father or of his parents. Seemingly she has made satisfactory progress in school, in her

music lessons, in the cultivation of friends, in her religious training, and in her physical development. Her health is good. She has been tardy at the public school which she attends only twice and in neither instance was she, the plaintiff or his wife responsible. The conclusion appears warranted that she has become rooted in Ontario, in the plaintiff's family and in the religious faith to which she adheres.

The testimony given by the defendant dwelled upon the character of Lynne's clothing and the desirability that she have a bedroom of her own. As a matter of fact, the plaintiff's home provides her with a room of that kind which is well furnished.

Life is not a mere matter of possessing a room, of breathing air and having daily bread. Life is a quest for happiness. Happiness comes from finding oneself in a congenial family circle, possessing agreeable friends and acquiring beliefs which elevate the spirit and yield hope and comfort. Evidently this girl has been able to brush aside as chaff the legal warfare which her parents maintain and get pleasure out of the current day. Her happiness comes from her local attachments, such as her grammar school work, her Sunday school activities, her playmates, her piano lessons and her devotion to her religious faith. Even the defendant concedes that Lynne is attached to her father by manifest affection. The evidence indicates that she is fond of her stepmother and the plaintiff's parents. She likes the other three children who are a part of the household and deems them her brothers. Her dog and the neighborhood play apparatus are other features of her activities. The good will manifested for her by her school teachers and the Sunday school preceptors, all of whom were mentioned by the witnesses, are other

factors which play their part in tieing her to the local community, to the plaintiff, to his family and to his home. Finally, we notice that for a month or more before Christmas she makes preparation for the gathering at Christmas in the nearby home of her grandparents of the numerous members of the Gallagher clan, including some who are her cousins.

The things of which we have taken notice are a part of a child's life. They are as much a part of a child as the bones of his body. They are the things which he dreams about at night and thinks about in the morning when he gets up. They bind him to his family and help to make the latter a unit. In short, this girl has become a part of her father's family, of her circle of friends and of the beliefs which she has adopted. All of those are a part of her life. To take her from her father and award her into her mother's custody would require her to shed much which is now a part of her.

In expressing the above views, we do not mean to imply that the defendant, her mother, is no part of this girl's life. The evidence indicates that the daughter is fond of her mother and manifests affection for her. That is as it should be. It is to the credit of the father that he has not sought to interfere with the affection. But since the girl has been much more with her father and with the Gallagher family than with her mother, the attachments have been formed of which we have taken notice. Likewise since she has lived in her present neighborhood much longer than the short periods which she has spent in Stayton, she naturally deems her father's house as her home.

■ In instances of this kind it is the duty of the court to deem the child's welfare as transcendent in importance. We are prepared to do so.

We are satisfied that this child has made satisfactory progress where she is. If the father's custody is continued, we know of no reason for inferring that the gratifying progress will not continue. The fact that his home is new and contains three other children appears advantageous. We deem favorable the circumstance that a very cordial relationship exists between Lynne and the plaintiff's wife, who is only fourteen years older than her stepdaughter. If custody is given to the defendant we have no assurance as to the future.

The issues before us cannot be solved by quoting the common cliches, although we have taken all of them into account. The solution must be sought primarily in the facts. To tear up all the roots which tie the youngster to a good environment in which she has grown and developed, in the hope of improving upon demonstrated merit, would be perilous. The risk should not be taken in the absence of bright prospects and strong assurances of success. If we should view the mother's proposals with sanguine eyes and, influenced by them, give her custody of Lynne, we may discover later that the bright prospects were nothing more substantial than pots of gold at the foot of a rainbow. We say that without questioning the sincerity and good faith of the mother. If an experiment with the mother proved unfortunate, another change would have to be made. Possibly, in such an event, Lynne could not return to her present home or, if she could, the chances are that she could not reacquire for herself what she now possesses.

■ In all likelihood, the trial judge, whose order is under attack, gave adequate attention to the rule that, generally, a child of tender years fares better with her

mother than with her father. We ourselves have given that rule grave consideration. We are certain that the trial judge took into consideration the natural inadvisability of divided custody. But general rules frequently do not decide specific cases. Moreover, all rules of the kind just mentioned must yield to the one of which we have already taken notice; that is, that the welfare of the child is of supreme importance.

■ We think that the defendant submitted little reason in support of her contention that Lynn's welfare would be promoted by a change in her custody. Better reasons, in our opinion, were given for maintaining the general custody in the plaintiff. We believe that the attacked order properly continues the custody in the father.

As will be observed by reverting to the modification order under attack, it ends the defendant's privilege of having her daughter at Christmas time and in the periods of ten days immediately following the close of school and ten days immediately preceding the opening of school in the fall. The evidence affords good support for those modifications. We deem it unnecessary to set forth the circumstances.

The decree of the Circuit Court is affirmed. Costs and disbursements will not be awarded.

LUSK, C. J., and BRAND, J., did not participate in this decision.