Argued March 3, affirmed March 24, 1954

ALLEN *v.* ALLEN

268 P. 2d 358

*William S. Fort* argued the cause for appellant. On the briefs were Husband, Fort and Johnson, of Eugene.

*John W. Pennington* argued the cause for respondent. On the brief were Ray and Pennington, of Eugene.

Before WARNER, Acting Chief Justice, and LUSK, BRAND and PERRY, Justices.

WARNER, A.C.J.

Vernon V. Allen, the appellant, and Helen Allen (now Helen Allen Miller) the respondent, were divorced in 1948 pursuant to a decree made in the circuit court for Lane county. The decree followed a stipulation of the parties with reference to the custody and control of the children of the parties and provided in part:

> "The Plaintiff [Vernon V. Allen] is granted the care, custody and control of the minor children of the parties, Glenn Ray Allen and Helen Kay Allen, during eleven months of the year, including the entire school year, and the Defendant is granted the care, custody and control of the minor children for the period of one month in each year between July 1 and August 31 and beginning with the year 1948."

While the children were in the custody of the respondent in California in 1950, pursuant to the provisions of the 1948 decree, respondent instituted a proceeding in the Superior Court of that state wherein she sought to modify the Oregon decree and thereby secure the complete custody and control of the children. The California court attempted to change the Oregon decree only to the extent of conferring on the children's mother an expanded right to have them with her 60 days of the summer season and on alternate Christmas and Easter vacations.

Inspired, no doubt, by this action of the California court and to circumvent its repetition, Mr. Allen moved the circuit court of Lane county for a modification of the custody provision of the Oregon decree so as to provide that the care, custody and control of the children vest solely in him, subject only to the right of reasonable visitation in Oregon by their mother. The father appeals from the circuit court's denial of the motion.

The appellant urges two matters as his claim of a change of conditions warranting such modification in accordance with his motion. They are (1) the wishes of the children and (2) the fundamental changes flowing from their growth and development during their adolescence. No representation is made by either party derogatory to the character of the other. The lower court found no merit in either claim sufficient to warrant an allowance of appellant's motion. We concur in those findings.

■■ The wishes of the children are reflected by certain letters written by them expressing a desire to remain with the appellant. At the time of the motion in 1951 the boy was 13 years of age and the girl 11. Appel-

lant contends that these preferences of the children are entitled to "substantial weight". A more nearly accurate evaluation of this kind of evidence is that if the child has attained the age of discretion, the court may consider it as persuasive, although not controlling. *Hurner v. Hurner,* 179 Or 349, 365, 170 P2d 720; *Johnston v. Johnston,* 155 Or 256, 257, 63 P2d 209. Our examination of these letters, particularly those written in Lane county in December 1951, inclines us to believe that they were not free and spontaneous expressions of the youthful writers but, on the other hand, were written responsive to the subtle influences which a parent can bring to bear on an unsuspecting youthful mind and thereby incite in the child prejudices against one parent and excessive devotion in favor of the other. The circuit court was correct in refusing to be persuaded by their contents.

The record reveals that the circuit court, in arriving at its conclusion in the matter at bar, gave some respect to the California decree above referred to, apparently on the theory that the Allen children had established a legal domicile in that state while visiting their mother in response to the mandates of the Oregon decree. It raises the question of the place of the children's legal domicile and is of such importance in this matter that it should be set at rest for all time.

A very apparent reason for the father's desire to modify the decree is to still any future contention concerning the legal domicile of the children and in a manner which will compel the respect of courts in foreign states. There is much in the record to warrant such a desire, particularly in terms of the welfare of the son and daughter of the parties. Too frequently

and in too many places the Allen children have been made pawns in the conflict between their father and mother in the efforts of each to obtain complete custody and exclusive control. It is a record which does neither party any honor. It strongly suggests that the cloak of paternal affection with which they drape themselves is but a cover to a smoldering spirit of vindictiveness engendered before their divorce and since inflamed by the subsequent litigation. In the nine years between 1942 and 1951 this boy and this girl have been made the subjects of custodial contentions in seven different judicial contests between the parents in the courts of three different states— Oklahoma, California and Oregon.

■ One of the many objectionable features of divided custody and control comes to the fore when the parents reside in different states, giving rise in some instances, as here, to litigation involving questions as to the situs of the child's legal domicile. This court has repeatedly expressed itself as being opposed to the principle of divided custody. *Hixson v. Hixson,* 199 Or 559, 263 P2d 597; *McDonald v. McDonald,* 197 Or 275, 281, 253 P2d 249; *Flanagan v. Flanagan,* 195 Or 611, 622, 247 P2d 212; *Raw v. Raw,* 195 Or 373, 245 P2d 431; *Gallagher v. Gallagher,* 187 Or 625, 634, 212 P2d 746. Divided custody will not be approved except under very exceptional circumstances. *Hixson v. Hixson,* supra.

If we correctly apprehend that one of the motives for the appellant's motion to modify was to fix for all time the place of the children's legal domicile, then we are persuaded that the motion in this matter was unnecessary to attain that result alone. The provisions of the custody paragraph of the decree as

made in 1948 plainly indicate it was the judicial intent that the permanent legal domicile of the Allen children was to be that established by their father, with whom they are to reside 11 months of the year, and we so hold. We also think that such a conclusion was exactly what the parties contemplated in their stipulation which was the basis for the custodial section of the decree.

When it entered the 1948 decree, the court was apprised of the custodial controversies which had theretofore prevailed between the parties with reference to these children and their mutual desire to terminate the future continuity. The stipulation referred to reads in part:

"WHEREAS, the habeas corpus proceeding above referred to, as well as the present suit, were the culmination of a series of difficulties and law suits between the parties involving the maritial [sic] relationship of these parties and the custody and control of their minor children, and

"WHEREAS, it is now the desire of the parties hereto fully and finally to settle, subject to the approval of the Court, all matters pertaining to the care, custody and control of the minor children wheresoever the same may be pending including any proceedings whether of civil or criminal nature brought in the states of Oklahoma, Kansas, California or Oregon and in whatever county within the said states within which said proceedings were had or continued   *   *   *."

No court conscious of the evils flowing from divided custody, particularly as evidenced by this prior history of the Allen family, would have ventured to give the other parent out-of-state custody and control if it had surmised that such temporary custody would be tortured into a claim of domicile in that foreign juris-

diction, when, in fact, the children were temporarily residing out of Oregon for only 30 days in each year, pursuant to a grant of a permissive visitation with their mother.

■ It is clear to us that the circuit court in 1948, well aware that the children's welfare would not be served by making them the subjects of the custodial controversy annually in the courts of whatever state they were then visiting their mother and on the theory that their Oregon domicile was abandoned when they entered the state of their mother's residence for a month's visit, intended to and did fix their permanent domicile as that of their father.

■■ Our construction of the Oregon decree, confirming as we do the father's domicile as the permanent domicile of the children, destroys the claims of the California courts to jurisdiction over them in proceedings intended to disturb their custodial status, as defined by the Oregon decree. It also robs the California decree of 1951 of the full faith and credit usually attaching to judicial judgments regularly obtained in a foreign jurisdiction. See *Lorenz v. Royer et ux.*, 194 Or 355, 241 P2d 142, 242 P2d 200; *Griffin v. Griffin*, 95 Or 78, 187 P 598; *Jones v. McCloud*, 19 Wash2d 314, 142 P2d 397; *Motichka v. Rollands*, 144 Wash 565, 258 P 333; Restatement, Conflict of Laws, 212, § 147.

The order denying appellant's motion is affirmed.