Argued December 8, 1955, affirmed January 18, 1956

# McFADDEN *v.* McFADDEN
## 292 P. 2d 795

*Bert McCoy,* of Eugene, argued the cause and filed a brief for appellant. With him on the brief was Donald F. Bach, Eugene.

*Wolf D. VonOtterstedt,* of Eugene, argued the cause for respondent. With him on the brief were Husband, Fort and Johnson of Eugene.

Before WARNER, Chief Justice, and TOOZE, LUSK and BRAND, Justices.

WARNER, C. J.

The defendant-appellant, Ludmila F. McFadden, in this matter, was awarded a decree of divorce in the circuit court of Lane County in September 23, 1953. Burke Lane McFadden, the plaintiff in that suit and the respondent here, and the appellant are the parents of three children, Joseph Lane McFadden, then about seven years old, Janet Frances McFadden, then five years old, and Jeanette Lillian McFadden, then nearly four years old. The decree of that date gave the care, custody and control of Joseph and Jeanette to the father, and of Janet to the mother, Mrs. McFadden, now residing and employed by the telephone company in Sacramento, California. The right of visitation was vested in both parents as to the children in the care or custody of the other.

The court, then acting through Judge Skipworth

(now retired), indicated a desire to review the status of the custodial arrangement a year hence. This prompted the mother to file an application for modification of the decree in August, 1954, wherein she sought the custody of all three children. After a hearing before Judge Frank B. Reid, Judge Skipworth's successor, the earlier decree was modified on October 8, 1954, wherein custody of Joseph was continued in the plaintiff father, who resides near Junction City, Oregon; and the mother was given the custody of the daughter, Jeanette, thereby placing the two sisters together in the California home of the defendant-appellant. The modification order continued the right of visitation in each parent as to the child or children not in their respective custody. Being dissatisfied with the result Mrs. McFadden appeals and asks us to give the custody of the boy to her instead of to his father. That is the only problem presented by the appeal, and that problem is simplified by the court's finding, in which we concur, that the evidence discloses that "* * * both the father and mother are of good moral character * * *". Indeed, the problem resolves itself into but one question—does the evidence support the circuit court's holding that the custodial disposition as made by the modification will be conducive to the welfare of the children concerned?

After the entry of the divorce decree, the father retained actual care and custody of Joseph, the boy, but with some assistance from the boy's paternal grandparents who live approximately a half mile from Mr. McFadden's homeplace. The little girl, Jeanette, while technically in the custody of her father, was actually under the control of her father's parents (where she had been placed by the father), and with whom she resided.

A somewhat similar condition prevailed as to the daughter, Janet. Although given to the custody of her mother she actually resided with an aunt and uncle in Sacramento, who live only two blocks distant from the home of Janet's mother.

Thus, we find, at the opening of the matter, all of the children separated from each other, and the little sisters not only living in different states, but in the main receiving their custodial care and training by strangers to the first decree of the court.

No serious issue is made that either parent neglected the children committed to his or her custody. It appears that each child is frequently visited by the parent having control of them. Nor is there any evidence challenging the character of the grandparents, or aunt or uncle, or their treatment of the little girls for whom they cared at the instance of the parent having technical custody of such children.

However, the court noted, and we think wisely, that the actual custodial arrangement for the little girls, as the court found it, made it "* * * a bad situation all around for all the children * * *, and that the two little girls should by all means be together." This later arrangement was made by the judge upon condition that the mother take both of the daughters into her home in Sacramento, "* * * where they should live and sleep." This direction was also coupled with a warning that if not done, the court would entertain a further petition as to their future care and custody.

With reference to the boy, and as justification for continuing this custody in the father, the trial judge found that Joseph had been with his father ever since he was two years old; that he was very much attached to his father who gives him good care; that the boy is

being raised on a farm near Junction City, and attending a country school where he is doing very well. The court described the boy as somewhat timid, and deemed it unwise to move the child at this time to the place of his mother's residence.

■ This Court will not ordinarily disturb a decree respecting the custody of the children when the case is primarily one of evidence sufficient to warrant the conclusion reached by the trial court when fortified by his advantage in observing the witnesses. *Henry v. Henry,* 156 Or 679, 683, 69 P2d 280; *Norcross v. Norcross,* 176 Or 1, 5, 155 P2d 562. In terms of the record facts here we find the evidence supports the court's disposition made for the custody of the children, unless it can be truly said the circuit court in doing so ran counter to some controlling rule of law.

Both times the matter was before the circuit court the question of custody was given unusually close and careful consideration. One of the impelling reasons for such deliberate inquiry was prompted by the fact that the mother, following close upon and as an incident to the birth of her last child, had been a mental patient in the Oregon State Hospital from December, 1949 to the last of April, 1951. It was this situation which made Judge Skipworth apprehensive that there might be a recurrence of the appellant's mental illness which necessitated her commitment in 1949; and which apparently prompted his desire, above referred to, to review the custodial decree a year later. Judge Reid, relying upon the testimony of two physicians, respectively called by plaintiff and defendant, and his own observations of Mrs. McFadden, found that the health of the mother had so improved since the entry of the divorce decree that he had no apprehension of a recurrence of the trouble which had dictated her original

commitment to the State Hospital, and the concern expressed by Judge Skipworth. See *Richardson v. Richardson*, 182 Or 141, 144, 186 P2d 398.

The mother urges error, saying that because she was not the party at fault at the time of the divorce she was entitled to a custodial preference over the father; that the court erred in failing to adhere to what she reads as a mandatory rule that children of tender years shall always be awarded to the mother; and lastly, that the visitation privileges have the effect of creating a divided custody with all of its usual incident evils.

█ At the outset we observe that the mother imputes to the rules of law upon which she rests her appeal an inflexibility not warranted by the statements of this Court.

█ Appellant correctly states the cardinal rule governing matters of this kind when she advisedly relies on the statement which she quotes in her brief, and taken from *Schiermeister v. Schiermeister*, 199 Or 391, 261, P2d 677, 395, reading: "* * * as in all cases involving the custody of minor children, the primary and controlling consideration is their best interests and welfare; *every other consideration is secondary.*" (Italics ours.) Also see *Gallagher v. Gallagher*, 187 Or 625, 629, 212 P2d 746. Subject to the paramount consideration of welfare we have also said: "There is no fixed rule governing the awarding of custody of minor children. Each case must be decided largely on its peculiar facts." *Layton v. Layton*, 174 Or 463, 469, 149 P2d 574; *Norcross v. Norcross*, 176 Or 1, 5, 155 P2d 562.

In the truth of the emphasized statement from *Schiermeister v. Schiermeister*, supra, is found the weakness of Mrs. McFadden's appeal. Even though the

rules she invokes were the law in the over-emphatic form she gives to them, they must necessarily yield to the more important consideration of what is best for the child.

In support of the proposition that the mother, when not the party at fault, is entitled to preferential status as against her husband, she invokes ORS 107.100 (a) reading:

"(1) Whenever a marriage is declared void or dissolved, the court has power further to decree as follows:

"(a) For the future care and custody of the minor children of the marriage, as it may deem just and proper, having due regard to the age and sex of such children, and unless otherwise manifestly improper, giving the preference to the party not at fault."

However, the preference thus accorded by ORS 107.100, supra, is not mandatory in the sense that it binds the court to a literal and compulsory obligation to vest custody in the prevailing party when there is evidence warranting a conclusion that such course would be contrary to a child's welfare. See *Van Doozer v. Van Doozer,* 181 Or 274, 277, 181 P2d 126, and cases there cited. *Cripe v. Cripe,* 186 Or 502, 504, 207 P2d 1049. Moreover, this Court has repeatedly approved the giving of custody of a child to the party at fault, as has been done in the instant case, when such custody seemed most conducive to the child's welfare. Such is the tenor of *Kellogg v. Kellogg,* 187 Or 617, 621, and cases there cited.

The rule usually applied which grants to the mother the custody of children of tender years, and especially young girls, is not without salutory exceptions when application of the rule appears to conflict with the consideration of the child's welfare. This is

always true when the mother is wanting in moral character. It is also true when a mother of highly emotional temperament has a deleterious effect on the child. *Kellogg v. Kellogg,* supra. We think that when a boy thrives as well as Joseph apparently has under the care of his father for most of the years of his young life, with a strong attachment subsisting between them, and when they dwell together under the circumstances here present, that the Court may well make child welfare a paramount consideration to the mother's claim of custody. This is even more persuasive when to do otherwise would mean to move the boy from familiar surroundings to a new home in a different state, especially at a time in his normal physical development when Joseph will have greater need of masculine direction than the counsel of a mother, no matter how worthy she may be. The very statute, ORS 107.100, supra, upon which the mother relies, emphasizes that the Court give "due regard to the age and sex of such children" when decreeing custody. Also see *Nelson on Divorce,* supra, § 15.17 p. 193. We think the trial court has exhibited commendable wisdom in this respect in the instant matter.

██ Lastly, the mother complains that the visitation privileges granted to each parent under the decree have the effect of creating a "divided custody" with all of its incident evils. "Divided custody" of children has long been deplored by this Court. *Hixon v. Hixon,* 199 Or 559, 563, 263 P2d 597; *Allen v. Allen,* 200 Or 678, 682, 268 P2d 358. "Divided families", that is in the sense of a separation of young children of a given family, should also be avoided when the children can be united in one home under one parent without sacrificing the welfare of the children to the accomplishment of such unity. *Nelson on Divorce,* supra § 15.18

p. 194. See *Heisler v. Heisler,* 152 Or 691, 695, 55 P2d 727, where a provision for dividing the custody of children between parents was approved. But "divided custody", as used by this Court is not synonymous with the concept of a family of divided children as referred to above. "Divided custody", as the term has been heretofore employed in our decisions relating to the custody of children of divorced parents, has reference to decrees which alternate the custody of the child between the estranged parents for varying periods of time each year. "Custody", in the sense we use it connotes, among other things, the right of the legal custodian to establish the legal domicile for the child, whereas such right does not abide with the parent who enjoys only the occasional right of visitation, i. e., the right to visit the child wherever it is, at certain time, or to have the child visit the parent for stipulated periods. *Allen v. Allen,* supra p. 684. The challenged decree clearly grants an absolute and undivided custody of the child or children awarded to the care and control of the respective parties.

The decree will work no hardship on the mother, as she will be entitled to visit her son and have him visit her at the holiday and vacation times provided for in the decree as modified, and should the condition of the parties change she can then apply to the Court for appropriate relief.

As the Court said in *Gallagher v. Gallagher,* 187 Or 625, 629, 212 P2d 746, we, too, here "come to the reluctant conclusion that this case is another instance in which the judicial machinery cannot turn out a perfect product. The parties must accept less than they expect and be satisfied with it."

The decree of modification is affirmed without costs to either party.