Submitted on record and appellant's brief October 29,
affirmed December 3, 1973

R., *Respondent, v.* R. (No. 100463), *Appellant.*
516 P2d 476

Jack A. Gardner, Eugene, for appellant.

No appearance by respondent.

Before Schwab, Chief Judge, and Langtry and Foley, Judges.

LANGTRY, J.

In 1971 the custody of three R——— girls and one boy, now aged 16, 13, 10 and 8, was awarded in a divorce decree to their mother. In the ensuing two years the mother lived with two men, the latter of whom was married to another woman. She apparently encouraged her paramour to direct and discipline the children, and they expressed resentment of it. The home environment of the children declined until in December 1972 the oldest child, a daughter, ran away and became the subject of a juvenile court proceeding. The upshot of this, simultaneous necessity for surgery for the mother and leaving all the other children with the paramour, was that their father took them all to his home (from Lane County to Multnomah County) and moved for a change of custody. A contested custody hearing resulted. The trial judge thereafter changed custody of three of the children to the father, leaving the second eldest, a girl, in custody of the mother.

The father has appealed the latter part of the ruling, which we try de novo. ORS 19.125 (3) and 107.115 (3) (b). The mother has not filed a brief on appeal, but we have the benefit of the extensive transcript of the hearing, at which both parents were represented by quite competent counsel.

The reasons for the trial court's change and splitting of custody of the children were stated in the record:

> "The Court finds itself faced with a series of bad choices to some extent without any real good solutions. We start out with certain known factors. Mr. R——— has demonstrated a number of years of apparent irresponsibility, and all of a sudden he's going to come along and make amends.

"Mrs. R———, on the other hand, in her recent history has shown that she has put her own personal feelings ahead of those of her children. I think it's obvious from what all of the children had to say, perhaps with the exception of * * * [the boy, aged 8], that they were disturbed by their mother's conduct * * *.

"* * * [I]t's obvious that the present situation has not lead [sic] to a stable home. I'm satisfied that there has been a change in circumstances that would warrant change in custody of all four children. I'm going to do something that is ordinarily not done. I'm going to make a different ruling in regard to one of the children and I'll go into some detail as to why, because this is unusual, and the supreme court has said it's to be done only in rare instances * * *.

"* * * * * *

"The reason that I'm treating * * * [the 13-year-old girl] differently, is because it's obvious to the Court that she is at an age where she has a certain amount of rebellion. I tend to feel that she is going to have problems wherever she is. I tend to think that placing her at her age somewhere obviously at odds with her present interest would just give her an excuse to rebel, and would cause Mr. R——— a great deal of difficulty. I don't feel that the present home is perfect by any means but I tend to think that E——— herself might be easier to control within her own mother's home. I tend to feel that she's at an age that perhaps her own personality is getting quite well forged at this point, and the circumstances and the damage that might have been done is probably already done.

"On the other hand, with the younger kids, E——— and R———, I do feel they are entitled to a stable home life. I have some reservations as to Mr. R——— ability to follow through with this. I know at this point his intentions are good but it's obvious from Mrs. R——— conduct that she has

not provided the needed stability, and we can only assume that she will probably not provide it in the future."

The court's authority to order a change of custody in divorce proceedings is found in ORS 107.135. The guidelines to follow are well set forth in *Tingen v. Tingen*, 251 Or 458, 459, 446 P2d 185 (1968):

"* * * In determining custody, we are required to consider the best interests of the children and the conduct and moral standards of the parties. ORS 107.100 (1).

"1. In determining the best interests of a child in a custody dispute the court ought to consider all the relevant factors. These, as we see them, would generally include: (1) the conduct of the parties; (2) the moral, emotional and physical fitness of the parties; (3) the comparative physical environments; (4) the emotional ties of the child to other family members; (5) the interest of the parties in, and attitude toward, the child; (6) the age, sex, and health of the child; (7) the desirability of continuing an existing relationship and environment; and (8) the preference of the child.

"2. Best interest in custody matters should not be determined by isolating one of these variable factors and relying on it to the exclusion of other factors * * *."

In *Tingen*, the trial court had split custody of four children, one to the mother, three to the father. The court reversed, giving custody of all to the mother, without saying that avoidance of splitting custody was a factor, but emphasizing that the trial court had given undue consideration to some factors to the near exclusion of others.

In *McFadden v. McFadden*, 206 Or 253, 292 P2d 795 (1956), where custody of children was split be-

tween parents, one to the father and two to the mother, the Supreme Court approved the split, but said:

> "* * * [A] separation of young children of a given family, should also be avoided when the children can be united in one home under one parent without sacrificing the welfare of the children to the accomplishment of such unity. *Nelson on Divorce,* supra § 15.18 p. 194. See *Heisler v. Heisler,* 152 Or 691, 695, 55 P2d 727 [1936], where a provision for dividing the custody of children between parents was approved * * *." 206 Or at 260-61.

In *Heisler* (cited in quote, supra), the court said:

> "* * * What is the proper disposition of the children? The boys, Harrison Dean Heisler and Richard C. Heisler, are living with defendant, and their care and custody should be awarded to him. The two girls, Pauline D. Heisler and Betty May Heisler, are, and for more than one year have been, living with plaintiff, and their care and custody should be awarded to her * * *. As the court retains jurisdiction over these children until they become of age, application may be made for change of such custody if conditions change." 152 Or at 695.

In *Heisler* the court appeared, on appeal, to give effect to a principle which we noted in *State v. Blum,* 1 Or App 409, 463 P2d 367 (1970), that is, the need for a child to acquire a sense of belonging to one family situation—not to be in the position of frequently changing homes and parental figures. We deem this to be virtually the same as factor or guideline (7), quoted supra, in *Tingen.*

The question which the trial judge decided in the present case was close. He considered the instability previously demonstrated by both parents. He considered the factors enumerated in *Tingen,* and the general

disapproval of splitting custody enunciated in *McFadden*. We think if we had been in his place, giving proper weight to all factors, we would have come to a different conclusion with reference to giving E——'s custody to the mother. We would have left her in the father's home with her sisters and brother. But the decision was delicate and close. On appeal, as the court was in *Heisler,* we are faced with an additional factor if we reverse the trial court—the changing of a child's surroundings, home and parent figures again. Parts of the trial judge's remarks disclose that the physical custody of E—— was immediately changed from the father to the mother so she could immediately get back to her familiar school and friends. If we reverse, our decision would move her again. Faced with this yo-yo effect upon the child, and the closeness of the question otherwise, our de novo decision is to leave the child where she is. As the court noted in *Heisler,* if events do not work out in the best interests of the child, on changed conditions her custody may yet be changed. Unfortunately, the orders of a court are poor substitutes for what unselfish parents should do for their children.

Affirmed.